UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRA, INC., a Delaware Corporation and
DETROIT INTERNATIONAL BRIDGE
COMPANY, a Michigan Corporation

       Plaintiffs,

-vs-

DAVID ESTRIN, Individually, and
GOWLING LAFLEUR HENDERSON LLP,
a Canadian Limited Liability Partnership,

       Defendants.

Case No. 06-15185

Hon. Nancy G. Edmunds

Magistrate Judge Steven R. Whalen

---

**Attorneys for Plaintiffs:**
Craig L. John (P27146)
Thomas J. Murray (P56331)
Joseph A. Doerr (P66109)
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
Phone: (313) 568-6800
Email: cjohn@dykema.com

**Attorneys for Defendants:**
Sharon M. Woods (P22542)
Kevin Kalczynski (P57929)
Melonie M. Stothers (P65344)
Barris, Sott, Denn & Driker, PLLC
211 West Fort Street, 15th Floor
Detroit, Michigan 48226
Phone: (313) 965-9725
Email: kkalczynski@bsdd.com

---

**DECLARATION OF DAVID ESTRIN**

David Estrin, under penalty of perjury, states:

1. I have personal knowledge of the facts recited in this Declaration, and I am competent to testify to them.

2. Since 1971, I have been a lawyer, licensed by the Law Society of Upper Canada. I have been certified by the Law Society as a Specialist in Environmental Law since 1996.

3. Since 1990, I have been a Partner in Gowling Lafleur Henderson LLP ("Gowlings") resident in Gowlings' Toronto office.

4. In 2001, the Buffalo and Fort Erie Peace Bridge Authority (the "Bridge Authority") retained Gowlings, and in particular me, with respect to the Bridge Authority's plans to build a second bridge linking Buffalo, New York and Fort Erie, Ontario.

5. In connection with that representation, I learned that affiliates of the Ambassador Bridge (the "Ambassador Bridge") had purchased property near the existing Peace Bridge that links Buffalo and Fort Erie in connection with a plan to build a competing bridge.

6. In connection with that representation, I wrote letters on Gowlings' letterhead, to the Ambassador Bridge, attention Dan Stamper, on May 22, 2003 and September 9, 2004. Both letters warned the Ambassador Bridge not to violate the Bridge Authority's exclusive franchise with respect to the existing Peace Bridge. The May 22, 2003 letter advised the Ambassador Bridge that Gowlings and I were counsel for the Bridge Authority and threatened litigation by the Bridge Authority against the Ambassador Bridge if it attempted

2

to build a bridge within six miles of the existing Peace Bridge. Copies of the May 22, 2003 and September 9, 2004 letters are attached to Defendants' Brief in Support of Their Motion for Summary Judgment as Exhibits 4 and 5.

7. At no time after I sent either the May 23, 2003 or the September 9, 2004 letters did the Ambassador Bridge or Dan Stamper claim that Gowlings was engaging in a conflict of interest by representing the Bridge Authority adverse to the Ambassador Bridge's plan to build a new bridge in the vicinity of the existing Peace Bridge.

8. Since the early 2000s, the City of Windsor has been attempting to solve traffic problems created by the heavy volume of border-crossing truck traffic. In late 2002, Windsor engaged Gowlings and me to assist in evaluating competing proposals for solving the traffic problems. Around that same time, the Canadian Transit Company ("CTC") proposed using an existing train/hydro-electric corridor in southwest Windsor to provide a new truck access route to the Ambassador Bridge. Shortly thereafter, Gowlings and I began to represent Windsor in opposition to CTC's proposal. At the time, I did not amend my initial conflict filing to add CTC as an adverse party when my general representation of Windsor gradually turned adverse to CTC.

9. In June 2004, CTC applied to Windsor for site plan approval for more toll booths as well as a "bridge deck extension" (the "Site Plan Application") for the existing Ambassador Bridge. A month later, CTC filed a Preliminary Review Permit Application (the "Preliminary Bridge Application") with the United States Coast Guard for "twinning" the Ambassador Bridge (the "Bridge Plan").

3

10. Upon reviewing CTC's Preliminary Bridge Application to the Coast Guard, it became clear to me that the additional toll booths and bridge deck extension called for in CTC's Site Plan Application were not simply improvements for current traffic, but were in fact central components of CTC's Bridge Plan.

11. Upon making this determination, I took several steps on behalf of Windsor in opposition to CTC's Bridge Plan. Some of those steps are listed below.

12. In June, 2004 I contacted Leon Paroian, a CTC lawyer, and orally advised him that the Site Plan Application did not comply with Windsor's zoning requirements.

13. On September 14, 2004, I wrote to Dan Stamper, CTC's President, confirming that Gowlings was representing Windsor. A copy of my September 14, 2004 letter to Dan Stamper is attached to Defendants' Brief in Support of Their Motion for Summary Judgment as Exhibit 14. The letter advised Stamper that Gowlings and I "are the solicitors for the City of Windsor" concerning CTC's Site Plan Application. The letter also enclosed an agreement I drafted (the "Proposed Agreement") whereby Windsor would approve the Site Plan Application if CTC agreed that the approval would not be considered an endorsement of CTC's Bridge Plan.

14. I learned that on September 16, 2004, Matty Maroun, the owner of Centra, called the Chief of Staff to Windsor's Mayor, and complained about the Proposed Agreement. The Chief of Staff advised Mr. Maroun that she would pass along his comments to the Mayor and to me.

15. I learned that on September 28, 2004, Dan Stamper called the Chief of Staff

4

to Windsor's Mayor, and complained about the Proposed Agreement and suggested further negotiations.

16. On September 30, 2004, Windsor officials and I met in Warren, Michigan with Matty Maroun, Dan Stamper and CTC's lawyer regarding the Proposed Agreement. We negotiated for three hours but no settlement was reached.

17. Subsequently, I continued to negotiate the Proposed Agreement with the Laing Michener firm, which was representing CTC.

18. Eventually on February 14, 2005, the Windsor City Council approved a Site Plan Control Agreement signed by Windsor and CTC. A copy of the Site Plan Control Agreement is attached to Defendants' Brief in Support of Their Motion for Summary Judgment as Exhibit 7.

19. Key aspects of the Site Plan Control Agreement, which I drafted and negotiated on behalf of Windsor against CTC, makes clear that Windsor's approval of CTC's Site Plan Application would not prevent Windsor from opposing CTC's Bridge Plan.

20. Until a few weeks before Centra filed this lawsuit, I was completely unaware that Centra, DIBC, or CTC had retained Gowlings on any other matter. At no time have I had communications with anyone associated with Gowlings about any work that they may have done on behalf of Centra, DIBC or CTC.

21. I have never spoken to Dale Hill or Tim Wach about any professional matters, including their representation of Centra, DIBC or CTC.

22. I have never seen any documents related to Dale Hill, Tim Wach or Gowlings'

5

representation of Centra, DIBC or CTC.

23. All documents related to my representation of Windsor have been electronically encrypted since January 22, 2004 for reasons unrelated to this lawsuit. This means that I control access to the files. No one from Dale Hill's Tax and Transfer Pricing department or from Tim Wach's Tax department has ever been granted access to those files.

24. In early 2006, CTC submitted an "Application for Approval of Location and Plans for Construction of a Second Fixed Highway Bridge Over a Navigable Waterway of the United States (Detroit River) Adjacent to the Existing Ambassador Bridge" (the "Second Application") to the United States Coast Guard.

25. The Coast Guard asked for public comment on the Second Application and on September 14, 2006, I filed comments on behalf of Windsor. A copy of that letter (without exhibits) is attached to Plaintiffs' First Amended Complaint as Exhibit A. Since that time, the Coast Guard has not taken action, and CTC's Second Application remains pending.

26. In addition to the approval of the United States Coast Guard, CTC still must obtain approvals from several other governmental authorities before it can begin implementing its Bridge Plan. Those authorities include: the Canadian Environmental Assessment Agency, the City of Detroit, the City of Windsor and the State of Michigan.

27. The letter that I sent to the United States Coast Guard on September 14, 2006 is not based on confidential and/or privileged information that was supplied by Centra to Gowlings. I have never had any such information in my possession.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury under the laws of

6

the United States of America, that the foregoing is true and correct.

Executed on January 9th, 2007.

David Estrin

328523.02