Gowling Lafleur Henderson LLP    |    Barristers & Solicitors    |    Patent & Trade Mark Agents    |



Suite 2600
160 Elgin Street
Ottawa, Ontario
Canada K1P 1C3
Telephone (613) 233-1781
Facsimile (613) 563-9869
www.gowlings.com

**Dale C. Hill**
Partner, Tax Services
Direct (613) 786-0102
dale.hill@gowlings.com

June 27, 2005

Mr. Dan Stamper
The Canadian Transit Company
P.O. Box 32666
Detroit, Michigan
48232

Dear Mr. Stamper:

**Re:   Tax and Transfer Pricing Services**

We are pleased that you have engaged Gowlings in connection with Tax and Transfer Pricing Services in respect of the Canadian Transit Company (now inclusively referred to as "CTC") .

I will be the professional responsible for handling your requirements and reporting to you periodically. I will be assisted by other members of the Gowlings Transfer Pricing and Competent Authority Group which includes Tony Wark, Mark Kirkey and Jamal Hejazi. The advice that you receive from me, and from other members of the Transfer Pricing Group, will not be legal advice and the services that we provide directly to you will not be legal services. However, in reviewing your situation we may recommend that we seek the advice of a Gowlings tax lawyer on your rights and representation under the Income Tax Act and related regulations and agreements. We will indicate to you when information is required for the purposes of instructing legal counsel and will discuss with you which of the Gowlings solicitors would be responsible for providing you with legal services and advice.

This letter confirms the terms upon which you have engaged us and under which we are prepared to act. Please contact me immediately to discuss any revision or clarification that you may require. Any changes to these terms must be made in writing. While the scope of our engagement is limited as described below, we would welcome the opportunity to represent you in other matters. By executing and returning a copy of this engagement letter, you accept these terms of engagement and agree that they will apply to this matter and every other matter with respect to which we represent you until such time as you and we agree otherwise.

**Scope of Representation**

We confirm that you have retained us to perform the following transfer pricing services on your behalf:

1.      To advise CTC as to the correct course of action in their dispute with the Canada Revenue Agency (CRA) as it relates to CRA's denial of promotion (i.e. coupons) , and bulk facility expenses paid by foreign related parties during the taxation years 1998 through 2000.

2.      To plan and present arguments to the CRA's Competent Authority Services Division in support of CTC's position that certain expenses disallowed during the taxation years 1998 through 2000 were reasonable given the facts and circumstances.

Gowling Lafleur Henderson LLP    |    Barristers & Solicitors    |    Patent & Trade Mark Agents    |

Page 2

3.      To plan and represent arguments to the CRA's Competent Authority Services Division with respect to the resolution of the Advanced Pricing Arrangement (APA) involving the allocation of profits associated with CTC's and a foreign related party's joint ownership of the Ambassador Bridge, during the taxation years 1998 through 2005.

4.      To plan and prepare documentation in respect of the appropriate management/service fees charged to CTC by foreign related parties for the taxation years 2000 through 2005.

5.      To assist and advise in the litigation of the above noted issues as needed.

We expect that most of the work will be performed or supervised by Dale Hill, Tony Wark, Mark Kirkey and Jamal Hejazi. However, we will assign other members of the Transfer Pricing Group or staff in our Firm to provide transfer pricing services if in our judgment that becomes necessary or desirable. As noted above we will also discuss with you the involvement of particular solicitors who would be responsible should it be necessary to provide you with legal services.

## Goals and Objectives

We understand your desired outcome is: the acceptance by the CRA of the expenses deducted by CTC during the taxation years 1998 through 2000; the resolution of the APA involving the taxation years 1998 through 2005 and; documentation in support of management/service fees for the 2000 through 2005 taxation years and if applicable a management/service fee APA covering the period 2005-2010.

Before taking any of the major steps outlined above, we will ask for your instructions on how you wish to proceed. We will then provide the services necessary to carry out your instructions. Although we can make no guarantees about the outcome of your matter, we will utilize our expertise and experience to represent your interests to the best of our abilities.

## Communication and Reporting

Two-way communication is very important to our relationship and our ability to serve you effectively. We will take instructions from and report to Dan Stamper, Fred Calderon and Peter Farah from time to time by letter, e-mail, telephone, or in person. If you have a preferred mode of communication, have specific reporting needs, or ever need clarification of the information or materials sent to you, please contact us. If your contact information changes, please be sure to advise of the change immediately so that we can continue to communicate with you in a timely manner.

## Information Management & Confidentiality

To enable us to meet your expectations and objectives, it is essential that you provide us with all factual information relevant and material to the subject matter of our representation. As you become aware of new or updated information, we ask that you share that new information with us.

All information provided concerning the business and affairs of CTC acquired in the course of our professional relationship with you shall be held in strict confidence unless you expressly or implicitly authorize disclosure. We do point out that our ethical rules define a limited number of circumstances in which we are obligated to disclose information that may be confidential. In such circumstances, we will not disclose more information than is required.

In the course of our representation, we collect only such information from individuals or organizations as is required for the purposes of providing our services to you. To the extent that any of that information relates to personal and private matters, the Firm has a Privacy Policy in place that explains how we manage this type of information. Please let us know if you would like to have a copy of that policy for review.

In addition to communications being confidential, if it is decided to involve the services of one or more Gowlings lawyers for the purpose of obtaining legal advice or services then communications with you will likely be protected by the law of solicitor-client privilege. The privilege only arises when you as a client reveal information in confidence to obtain legal advice or services. As noted above services provided directly by the members of the Transfer Pricing Group are not legal services and we will advise you if we recommend seeking legal advice or services from one or more Gowlings lawyers. Please let us know if you have any questions about our information management, confidentiality or the ambit of solicitor-client privilege.

**Conflicts of Interest**

We wish to avoid any circumstance in which you would regard our representation of another client to be inconsistent with our duties to and understandings with you. Because we represent a large number of clients in a wide variety of matters around the world, it is possible that we will be asked to represent a client whose interests are directly adverse to your immediate interests on other matters.

In that event, we will not undertake any representation directly adverse to your immediate interests if the subject of the other representation is related to the matter in which we currently represent you. However, if the subject of the other representation is unrelated to the matter in which we currently represent you, we will be free to undertake such an unrelated adverse representation without obtaining further consent from you at that time provided that:

    (a)    we do not have any information that is confidential from you from this engagement that could be used to your disadvantage in the unrelated matter;

    (b)    those in this Firm acting on the other matter are effectively screened from involvement in your matter, and

    (c)    our other client has consented to our continued representation of you.

By accepting these terms of engagement, you are consenting to, and waiving any right you may have to object to, our representation of another client whose interests are directly adverse to your immediate interests in a matter unrelated to this engagement.

**Fees for Services**

Our fees for services are based on our assessment of the reasonable value of our services. To assist us in determining that value, we assign hourly rates to each member of our Transfer Pricing and Competent Authority Group. We require each to maintain a record of the time spent and the services rendered on a particular matter. Time is recorded in tenths of an hour, which is the minimum we charge for any service. Our normal hourly rates are as follows: Dale Hill $750, Tony Wark $450, Mark Kirkey $450 and Jamal Hejazi $450, all amounts are expressed in Canadian dollars. As agreed, we will reduce our hourly rates to one half the above noted amounts as follows:  Dale Hill $375, Tony Wark $225, Mark Kirkey $225 and Jamal Hejazi $225; plus a contingent fee as described in Appendix A will be added to the reduced hourly rate as applicable.

From time to time, and typically annually, we reassess these rates to account for increases in costs, augmentation of the experience and ability of our personnel, and other factors, such that our current rates may change during our engagement with you.

We regard such hourly rates only as a benchmark, and not as a sole determinant of the value of our services for billing purposes. In addition to hourly rates, we also take into account the types of services involved; the size, scope, complexity and time limitations of the matter; the general conduct and cost of the proceeding; the skill, labour and responsibility involved; the results obtained; and other material circumstances such as requirement for work outside of normal business hours or exceptionally successful or efficient representation. We are prepared, consistent with these principles, to adapt our valuation of

services to any special needs you may have, but as noted above, such adaptation must be in writing otherwise these comments apply. GST will be applied, as required by law, to all fees.

### Disbursements and Other Charges

We are committed to serving you with the most effective and cost-efficient support systems and to this end we allocate charges for such systems in accordance with the extent of usage by individual clients. Consequently, in addition to fees for our services, we charge separately for disbursements and other charges incurred on your behalf, including but not limited to: telephone, facsimile, postage, messenger and courier services, travel and out-of-town living expenses, document reproduction/photocopying, online services, and government fees. All disbursements and other charges are specifically identified in our accounts along with GST and PST, as required by law.

### Financial Retainer

It is our Firm's policy to obtain a financial retainer at the outset of our engagement in an amount appropriate to the size and scope of the matter. In this case, we require a retainer of C$20,000.

On occasion, we may require an increase in a prior retainer owing to unforeseen circumstances, or in advance for substantial disbursements or charges that we must incur on your behalf. In all cases, the financial retainer amounts to a pre-payment subject to refund and not a commitment that the anticipated fees and disbursements for the initially requested work will not exceed such an amount. Any retainer will be held in our trust account and will not bear interest unless otherwise expressly agreed.

Unless we agree otherwise, the retainer will be applied to our final statement rendered to you on the matter. However, if we do not receive payment of our accounts within the stipulated period, we will apply the appropriate portion of the retainer amount to the unpaid bill and any interest owing. We will then require you to replenish the retainer. *[The following is optional* - If the retainer is ever exhausted, we will be required to suspend our efforts until it is restored.*]* If at the conclusion of the engagement, the amount of the retainer exceeds the sum due and owing, we will return the balance to you.

### Billing and Accounts

We strive to ensure that you are satisfied with both the quality of our services and the reasonableness of our accounts, and we invite you to discuss any questions or comments you may have about any fees and charges or the format of our accounts.

Our Firm's policy is to bill on a monthly basis. The statement of account will include our fees, disbursements and other charges incurred in the billing period other than those not available at the time of billing which will therefore be included in a later statement.

Our statements of account are due and owing upon receipt. Payment should be sent to Gowling Lafleur Henderson, LLP at the address shown on the statement. Accounts not paid within thirty days will be charged interest at the rate set out in the statement. In general, payments are applied first to the oldest outstanding statement.

### Termination of Services

We trust that our relationship with you will be a satisfying one. Nevertheless, you are free to terminate our representation at any time. Subject always to any applicable rule of court or code of conduct, we may terminate this agreement upon reasonable notice to you.

In the event of termination of this engagement, you remain liable to pay all fees, disbursements and other charges incurred up to the date of termination. Upon completion of the matter to which this engagement letter applies, or the earlier termination or the representation, our solicitor/client relationship will end, unless we expressly agree to continue the representation on other matters. In such case, we shall have no continuing obligation to advise you on any matter unless we otherwise expressly agree in writing.

We appreciate the opportunity to serve you and look forward to working with you. Should you have any questions regarding our services, fees or billing arrangements, do not hesitate to contact us at your convenience.

Sincerely,

**Gowling Lafleur Henderson LLP**

Dale C. Hill
National Leader
Transfer Pricing and Competent Authority Group

**We approve and accept the terms of our engagement with Gowlings, as outlined above.**

Dated this            day of                     ,

_____

For The Canadian Transit Company

# Appendix A

Gowlings is to receive a contingent fee based on the "Tax Savings" achieved by the Canadian Transit Company ("CTC") and obtained with Gowlings' assistance as a result of any APA, Competent Authority Settlement, Appeals proceeding, or negotiated audit resolution (i.e., a "Final Settlement") involving the Canadian income tax liabilities of the Canadian Transit Company and/or its subsidiaries.

Tax Savings and the contingent fee payable with respect thereto shall be determined by reference to the following provisions.

A) To the extent the Detroit International Bridge Company ("DIBC") is entitled for income tax purposes to greater than 55.9% of total Ambassador Bridge toll revenues (the "Excess Revenues") for any taxation year covered by any Final Settlement, Gowlings shall receive 20% of the Tax Savings which shall be deemed equal to the Excess Revenues multiplied by an assumed marginal tax rate of 40%.

B) To the extent CTC (or its subsidiaries and other Canadian affiliates) is entitled to any income tax deductions relating to management fees charged by any U.S. affiliate of CTC in excess of C$120,000 for a taxation year, by reason of a Final Settlement, Gowlings shall receive 20% of the Tax Savings computed as the marginal tax rate, 40% multiplied by the management/service fees in excess of $120,000 except that management/service fee deductions shall be decreased in the amount of any reduction in DIBC's share of total Ambassador Bridge toll revenues below 55.9% of such revenues for the corresponding taxation year.

C) Except for management/service fees as per B above, to the extent a Final Settlement entitles CTC (or its subsidiaries and other Canadian affiliates) to any other income tax deduction relating to any expense item charged by any U.S. affiliate in a taxation year, and which have been disallowed by CCRA as of the date of this Agreement, Gowlings shall be entitled to 20% of the Tax Savings computed as per A, above. Examples of such deductions are coupon charges, joint facility expense allocations.

The contingent fee relating to provisions A and B above, shall apply for all taxation years covered by any competent authority determination, APA or otherwise negotiated settlement through 2012. The contingent fee relating to Provision C, above, shall apply for all taxation years prior to 2012.

The contingent fee relating to provisions shall be payable to Gowlings upon the later of; a) the date of any Final Settlement or b) June 30th of the taxation year in which the Tax Savings are realized. Should a change in circumstance (e.g., U.S. and/or Canadian income tax rates) occur in a taxation year ending after 2005 such that the Final Settlement is no longer applicable and in such event, CTC will make a payment to Gowlings equal to the difference, if any, between 1.5 times the fee Gowlings would have charged on an hourly basis at its standard rates, and the total amount otherwise paid or payable to Gowlings with respect to all taxation years for which the Tax Savings were substantially realized.