*4/21*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CENTRA, INC.,

                   Plaintiff,

v.

DAVID ESTRIN, Individually, and
GOWLING LAFLEUR HENDERSON LLP,
a Canadian Limited Liability Partnership,

                  Defendants.

_____/

Case: 2:06-cv-15185
Assigned To : Edmunds, Nancy G
Referral Judge: Whalen, R. Steven
Assign. Date : 11/20/2006
Description: CMP CENTRA INC V. ESTRIN ET AL (DA)

## VERIFIED COMPLAINT & JURY DEMAND

    Plaintiff CenTra, Inc. (CenTra) alleges as follows for its Verified Complaint (Complaint)

against Defendants David Estrin and Gowling Lafleur Henderson LLP (collectively Defendants):

### Parties, Jurisdiction and Venue

    1.     CenTra is a Delaware corporation with its principal place of business located at

12225 Stephen Road, Warren, Michigan 48089.

    2.     Upon information and belief, Defendant David Estrin (Estrin) is a citizen and

resident of Canada, is a licensed Barrister and Solicitor in Canada, and is a partner in Defendant

Gowling Lafleur Henderson LLP (Gowlings).  At all times relevant to CenTra's claims in this

Complaint, Estrin acted as a part of and through Gowlings, and Gowlings is fully responsible for

and liable with Estrin for Estrin's acts and omissions.

    3.     Upon information and belief, Gowlings is a Canadian limited liability partnership,

is a resident and citizen of Canada, and has a principal place of business located at 1 First

Canadian Place, Suite 1600, 100 King Street West, Toronto, Ontario, Canada, M5X 1G5.

4.    Upon information and belief, Gowlings is an entity that is required to and has registered pursuant to the Foreign Agent Registration Act, 22 U.S.C. § 611, et seq. because it is serving and has served as an agent of a foreign principal. As described more fully below, Gowlings is serving as an agent of the City of Windsor.

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in controversy exceeds the sum or value of $75,000. In fact, as set out below, the amount in controversy exceeds the sum of $500,000,000.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (i) a substantial part of the events or omissions giving rise to the claim occurred in this District; (ii) Estrin and Gowling were subject to personal jurisdiction in this District at the time this action was commenced; and (iii) Estrin and Gowlings are aliens.

<u>**General Allegations**</u>

7.    CenTra is a diversified holding company whose subsidiaries are engaged in a wide range of businesses including, among other things, the business of transportation and shipping.

8.    As part of its business, CenTra wholly owns numerous subsidiaries, including the Detroit International Bridge Company, that own, operate and maintain the Ambassador Bridge (collectively DIBC). The Ambassador Bridge is the busiest and single most important commercial border crossing between Canada and the United States.

9.    For more than three (3) decades, CenTra and/or its subsidiaries have contracted with and retained Gowlings to perform, among other things, a variety of legal services relating to, among other things, the ownership, operation and maintenance of the Ambassador Bridge.

2

10.     The services rendered by Gowlings pursuant to its retention by and contract with CenTra and/or its subsidiaries relating to the Ambassador Bridge, have involved, among other things, issues related to the continued existence of the Ambassador Bridge and various challenges to the operation and expansion of aspects of the Ambassador Bridge.

11.     As a result of its retention by and contract with CenTra and/or it subsidiaries, Gowlings has learned information about, and the secrets and confidences of CenTra and/or its subsidiaries relating to the Ambassador Bridge.  Gowlings would not have otherwise come to know this information, confidences and secrets.

12.     For decades, Gowlings has regularly performed work and services, and provided advice to, CenTra and/or its subsidiaries in southeastern Michigan as part of its retention by and contract with CenTra and/or its subsidiaries.

13.     As a result of Gowlings' relationship with CenTra and/or its subsidiaries, in addition to performing as lawyers for CenTra and/or its subsidiaries, Gowlings became an agent to CenTra and/or its subsidiaries.

14.     As a result of Gowlings' relationship with CenTra and/or its subsidiaries, Gowlings had and continues to have contractual, professional and fiduciary obligations and duties to CenTra and/or its subsidiaries, including the duty of loyalty.

15.     CenTra and/or its subsidiaries have paid Gowlings millions of dollars in fees for services rendered and work performed by Gowlings.

16.     Recently, CenTra and/or its subsidiaries have been developing plans to operate and maintain the Ambassador Bridge by adding a six-lane structure or span immediately next to, and incorporating portions of the Ambassador Bridge currently in use (the "Span").

3

17.     CenTra's and/or its subsidiaries' efforts in adding the Span have involved the expenditure of substantial sums in both the United States and Canada.

18.     CenTra and/or its subsidiaries retained and contracted with Gowlings to represent and act on behalf of CenTra and/or its subsidiaries with respect to aspects of the development and financing of the Expansion Span.  The work included obtaining bond financing in excess of $500,000,000.

19.     Gowlings has met with representatives of CenTra and/or its subsidiaries in their offices in Warren, Michigan to assist in the development and financing of the Span.

20.     Because of its retention of and contract with Gowlings, CenTra and/or its subsidiaries provided Gowlings with substantial confidences and secrets, as well as other privileged information, with regard to the development and financing of the Span which Gowlings would not otherwise have received.

21.     Success with respect to the Span would position the Ambassador Bridge to remain the premier commercial and tourist border crossing between the United States and Canada.

22.     As part of the retention of and contract with Gowlings, on numerous occasions CenTra and/or its subsidiaries requested and directed Gowlings to take all legally permissible action and steps necessary to ensure the success of DIBC's financing and development efforts with respect to the Expansion Span.  Gowlings agreed to take the requested action.

23.     Upon information and belief, Gowlings has been retained by the City of Windsor ("Windsor") to oppose the construction of the Expansion Span.

24.     The agreement by Gowlings to represent Windsor to oppose construction of the Expansion Span placed Gowlings in a direct conflict with its representation of and contract with CenTra and/or its subsidiaries.

4

25.     Specifically, on September 14, 2006, Estrin submitted to the United States Coast Guard a letter on behalf of Windsor, attacking the plans of CenTra and/or its subsidiaries with respect to the Expansion Span, and attacking the credibility and trustworthiness of CenTra, its subsidiaries, and the officers, directors, employees and agents of CenTra and/or its subsidiaries, concerning the Expansion Span.  (**Ex. A**, the "Estrin Letter".)

26.     In direct contravention of the other services and work being performed by Gowlings on behalf of CenTra and/or its subsidiaries, the Estrin Letter demands that the United States Coast Guard apply the National Environmental Policy Act to the Expansion Span construction, and requests that "the full environmental implications of this proposal are examined to ensure that an alternatives analysis . . . is carried out." (**Ex. A** at 14.)

27.     Among other things that clearly are intended to undermine the efforts of CenTra and/or its subsidiaries with respect to the construction of the Expansion Span, the Estrin Letter claims that the Expansion Span application submitted to the United States Coast Guard was "Misleading", "Erroneous" and "Unreliable". (**Ex. A** at 17, 18, 24.)

28.     Ultimately, the Estrin Letter concludes that the Expansion Span is "a proposal fraught with significant and adverse environmental consequences for the City and its residents." (**Ex. A** at 35.)

29.     The Estrin Letter demands that any further actions with regard to the Expansion Span be "suspended" until a full Environmental Impact Statement is performed.  (**Ex. A** at 35.)

30.     Without question, the Estrin Letter relied on confidential and/or privileged information that was supplied to Gowlings by CenTra and/or its subsidiaries.

31.     The Estrin Letter was intended to irrevocably damage the plans of CenTra and/or its subsidiaries to finance, develop and construct the Expansion Span.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

32.   The Estrin Letter, and other actions taken by Gowlings and Estrin, constitute a breach of Gowlings' contractual, professional and fiduciary obligations and duties to CenTra and/or its subsidiaries.

33.   Until CenTra received the Estrin Letter, CenTra was unaware of the relationship between Gowlings and Windsor.

34.   For years, Windsor has opposed and hindered the development, maintenance and operation of the Ambassador Bridge by CenTra and/or its subsidiaries.

35.   Upon information and belief, Windsor opposes and hinders CenTra's development, maintenance and operation of the Ambassador Bridge because the Ambassador Bridge directly competes with Windsor's lucrative ownership interest in the tunnel connecting Windsor and Detroit.

36.   Upon information and belief, Gowlings, through Estrin, is scheduled to represent Windsor at a hearing before the United States Coast Guard on November 21, 2006.

37.   CenTra intends to oppose Windsor's position at the November 21, 2006 hearing.

38.   Gowlings' representation of Windsor directly conflicts with the ethical obligations and duties owed to CenTra and its subsidiaries.

39.   Gowlings' statements made in the Estrin Letter significantly damage and impede CenTra's interests not only with respect to the Ambassador Bridge and the Expansion Span, but in all of CenTra's business interests, holdings, and endeavors throughout the United States and Canada.

### Count I – Breach of Contract

40.   CenTra incorporates the allegations in the preceding paragraphs as though fully set forth herein.

6

41.     There are binding and enforceable agreements between CenTra and/or its subsidiaries and Gowlings that require Gowlings to zealously represent CenTra's interests and to maintain CenTra's information in confidence.  The agreements also require Gowlings to take all legally permissible action requested by CenTra and/or its subsidiaries with respect to Gowlings' representation of their interests.

42.     CenTra has satisfied its obligations to Gowlings by paying substantial fees to Gowlings for its representation.

43.     Gowlings has breached its obligations to CenTra by representing Windsor in an action directly adverse to CenTra and by, among other things, submitting the Estrin Letter to the United States Coast Guard.

44.     Upon information and belief, Gowlings has further breached its obligations to CenTra by using the confidential and privileged information provided by CenTra in its representation of Windsor against CenTra.

45.     Gowlings' conduct, as described in this Complaint, constitutes a breach of the contracts and agreements between the parties.

46.     CenTra has been damaged by Gowlings breach in an amount in excess of $75,000.

WHEREFORE, CenTra requests that this Court enter judgment in its favor, and against Gowlings, together with an award of interest, costs, attorney fees, and such equitable relief as the Court may find appropriate.

## Count II – Breach of Fiduciary Duties

47.     CenTra incorporates the allegations in the preceding paragraphs as though fully set forth herein.

7

48.     At all times relevant to this claim, Gowlings represented CenTra, and in that capacity had a fiduciary relationship with CenTra.  Because of the attorney-client relationship, Gowlings was an agent of CenTra.

49.     For years, Gowlings has cemented this fiduciary relationship because it has represented CenTra with regard to the ownership, operation, development and maintenance of the Ambassador Bridge.

50.     As legal counsel for CenTra, Gowlings owed a fiduciary duty to CenTra not to represent parties with interests adverse to CenTra, and not to take action adverse to the interests of CenTra and/or its subsidiaries.

51.     As legal counsel for CenTra, Gowlings owed fiduciary duties to CenTra.

    a.     Gowlings owed a duty not to disclose or use CenTra's confidential and privileged information in its representation of parties with interests adverse to CenTra.

    b.     Gowlings owed a duty of loyalty which includes a duty not to take action contrary to the interests of CenTra, not to take action for its own financial gain at the expense of CenTra's interests, and not to take action for the financial gain of others at CenTra's expense.

52.     Gowlings breached its fiduciary duties by, among other things:

    a.     representing Windsor in opposition to the Ambassador Bridge and the Expansion Span;

    b.     representing Windsor in a proceeding which is directly adverse to Centra's interests;

8

      c.      disclosing confidential and privileged information related to CenTra and the Expansion Span;

      d.      drafting and sending the Estrin letter; and

      e.      failing to disclose to CenTra its relationship with Windsor.

53.      As a direct and proximate result of Gowling's conduct, CenTra has sustained damages, including but not limited to lost profits, lost time, lost opportunity and the loss of the expenditure of substantial funds by CenTra at a time when Gowlings purportedly was working on behalf of CenTra while at the same time it secretly was undertaking plans with Windsor to undermine the efforts of CenTra..

WHEREFORE, CenTra requests that this Court enter judgment in its favor, and against Gowlings, together with an award of interest, costs, attorney fees, and such equitable relief as the Court may find appropriate.

## Count III – Legal Malpractice

54.      CenTra incorporates the allegations in the preceding paragraphs as though fully set forth herein.

55.      CenTra and Gowlings have an attorney-client relationship.

56.      As counsel to and an agent of CenTra, Gowlings has a duty to CenTra to act as a reasonable attorney would have acted.

57.      Gowlings breached its duty and breached its obligations under the Code of Ethics promulgated by the Law Society of Upper Canada by, among other things, failing to disclose its relationship with Windsor, disclosing confidential and privileged information, by taking action contrary to the interests of CenTra, by taking action for its own financial gain at the expense of CenTra's interests, and by taking action for the financial gain of others at CenTra's expense.

58.     As a direct and proximate result of Gowling's breach, CenTra has sustained damages, including lost profits.

WHEREFORE, CenTra requests that this Court enter judgment in its favor, and against Gowlings, together with an award of interest, costs, attorney fees, and such equitable relief as the Court may find appropriate.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: _Steven P. Cares_

Craig L. John (P27146)
Steven P. Cares (P68503)
DYKEMA GOSSETT, PLLC
400 Renaissance Center
Detroit, MI 48243-1668
(313) 568-5345

Date: November 20, 2006

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

10

## JURY DEMAND

Plaintiff Centra, Inc. hereby demands a trial by jury in this matter.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: *Steven P. Cares*

Craig L. John (P27146)
Steven P. Cares (P68503)
DYKEMA GOSSETT, PLLC
400 Renaissance Center
Detroit, MI 48243-1668
(313) 568-5345

Date: November 20, 2006

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

11

# EXHIBIT A

**GOWLINGS**

Suite 1600
1 First Canadian Place
100 King Street West
Toronto, Ontario
Canada M5X 1G5
Telephone (416) 862-7525
Facsimile (416) 862-7661
www.gowlings.com

David Estrin
Direct (416) 862-4301
Direct Fax (416) 862-7661
Assistant 416-862-4360
david.estrin@gowlings.com

September 14, 2006

*Delivered by Overnight Courier*
Office of Commander (dpw-3)
Ninth Coast Guard District
1240 East Ninth Street
CLEVELAND, Ohio
44199-2060

Attention:    Mr. Robert W. Bloom, Jr.
              Bridge Program Manager

Dear Sir:

**Re:  Your Public Notice 09-03-06 – Detroit International Bridge Company/Canadian Transit Company**
**Application for Approval of Location and Plans for construction of a Second Fixed Highway Bridge Over a Navigable Waterway of the United States (Detroit River) Adjacent to the Existing Ambassador Bridge**

**SUBMISSION ON BEHALF OF THE CORPORATION OF
THE CITY OF WINDSOR, CANADA**

**Introduction – The City of Windsor's Direct and Substantial Interest in This Matter**

We are attorneys for the Corporation of the City of Windsor, Ontario, Canada. This letter, and the various attachments to it which are separately bound in two volumes and which are also enclosed with this letter, constitute the comments on behalf of the City of Windsor to your agency objecting to the grant of the requested permit as well as the objection of the City to the preliminary determination by the U.S. Coast Guard that this application is properly processed as a "categorical exclusion" (CE) from the *National Environmental Policy Act* (NEPA). We ask that this letter and the attachments enclosed form part of the record in this matter.

The application proposes a new international vehicle bridge across the Detroit River between Detroit Michigan and the City of Windsor, Ontario ("Windsor" or "the City").

The proponent describes this as a "new six-lane structure" to be built to the west of the existing 76 year old Ambassador Bridge. As submitted below, in fact this bridge will accommodate eight lanes of traffic and should be considered and environmentally assessed as such.

Montréal    |    Ottawa    |    Toronto    |    Hamilton    |    Waterloo Region    |    Calgary    |    Vancouver    |    Moscow    |