UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRA, INC., a Delaware Corporation and
DETROIT INTERNATIONAL BRIDGE
COMPANY, a Michigan Corporation,

       Plaintiffs,

vs.

DAVID ESTRIN, Individually, and
GOWLING LAFLEUR HENDERSON LLP,
a Canadian Limited Liability Partnership,

       Defendants.

Case No. 06-15185

Hon. Nancy G. Edmunds

Magistrate Judge Steven R. Whalen

---

Craig L. John (P27146)
Thomas J. Murray (P56331)
Joseph A. Doerr (P66109)
DYKEMA GOSSETT, PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304-2820
(248) 203-0714

---

## FIRST AMENDED COMPLAINT [5]

Plaintiffs Detroit International Bridge Company (DIBC) and Centra, Inc. (Centra) allege as follows for their First Amended Complaint (Complaint) against Defendants David Estrin and Gowling Lafleur Henderson LLP:

### Parties, Jurisdiction and Venue

1.    DIBC is a Michigan corporation with its principal place of business located in Detroit, Michigan. Centra is a Delaware corporation with its principal place of business located at 12225 Stephens Road, Warren, Michigan 48089.

1

2. Upon information and belief, Defendant David Estrin (Estrin) is a citizen and resident of Canada, is a licensed Barrister and Solicitor in Canada, and is a partner in Defendant Gowling Lafleur Henderson LLP (Gowlings). At all times relevant to DIBC's claims in this Complaint, Estrin acted as a part of and through Gowlings, and Gowlings is fully responsible for and liable with Estrin for Estrin's acts and omissions.

3. Upon information and belief, Gowlings is a Canadian limited liability partnership, is a resident and citizen of Canada, and has a principal place of business located at 1 First Canadian Place, Suite 1600, 100 King Street West, Toronto, Ontario, Canada, M5X 1G5.

4. Upon information and belief, Gowlings is an entity that is required to and has registered pursuant to the Foreign Agent Registration Act, 22 U.S.C. § 611, et seq. because it is serving and has served as an agent of a foreign principal. As described more fully below, Gowlings is serving as an agent of the City of Windsor.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in controversy exceeds the sum or value of $75,000. In fact, as set out below, the amount in controversy exceeds the sum of $500,000,000.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (i) a substantial part of the events or omissions giving rise to the claim occurred in this District; (ii) Estrin and Gowling were subject to personal jurisdiction in this District at the time this action was commenced; and (iii) Estrin and Gowlings are aliens.

### General Allegations

7. DIBC owns, operates and maintains the Ambassador Bridge, the busiest and single most important commercial border crossing between Canada and the United States.

8. DIBC is owned by CenTra, a diversified holding company.

9. For more than three (3) decades, DIBC and Centra (collectively Plaintiffs) have contracted with and retained Gowlings to perform, among other things, a variety of legal services relating to, among other things, the ownership, operation and maintenance of the Ambassador Bridge.

10. The services rendered by Gowlings pursuant to its retention by and contract with DIBC relating to the Ambassador Bridge, have involved, among other things, issues related to the continued existence of the Ambassador Bridge and various challenges to the operation and expansion of aspects of the Ambassador Bridge.

11. As a result of its retention by and contract with DIBC, Gowlings has learned information about, and the secrets and confidences of DIBC relating to the Ambassador Bridge. Gowlings would not have otherwise come to know this information, confidences and secrets.

12. For decades, Gowlings has regularly performed work and services, and provided advice to, DIBC in southeastern Michigan as part of its retention by and contract with DIBC.

13. As a result of Gowlings' relationship with DIBC, in addition to performing as DIBC's attorneys, Gowlings became an agent to DIBC.

14. As a result of Gowlings' relationship with DIBC, Gowlings had and continues to have contractual, professional and fiduciary obligations and duties to DIBC, including the duty of loyalty.

15. Plaintiffs have paid Gowlings millions of dollars in fees for services rendered and work performed by Gowlings.[1]

---

[1] At times, Gowlings may have been paid directly by Centra on behalf of DIBC.

3

16. Recently, DIBC has been developing plans to operate and maintain the Ambassador Bridge by adding a six-lane structure or span immediately next to, and incorporating portions of the Ambassador Bridge currently in use (the "Span").

17. DIBC's efforts in adding the Span have involved the expenditure of substantial sums in both the United States and Canada.

18. DIBC retained and contracted with Gowlings to represent and act on behalf of DIBC with respect to aspects of the development and financing of the Span. The work included obtaining bond financing in excess of $500,000,000.

19. Gowlings has met with representatives of DIBC in their offices in Warren, Michigan to assist in the development and financing of the Span.

20. Because of its retention of and contract with Gowlings, DIBC provided Gowlings with substantial confidences and secrets, as well as other privileged information, with regard to the development and financing of the Span which Gowlings would not otherwise have received.

21. Success with respect to the Span would position the Ambassador Bridge to remain the premier commercial and tourist border crossing between the United States and Canada.

22. As part of the retention of and contract with Gowlings, on numerous occasions, DIBC requested and directed Gowlings to take all legally permissible action and steps necessary to ensure the success of DIBC's financing and development efforts with respect to the Span. Gowlings agreed to take the requested action.

23. Upon information and belief, Gowlings has been retained by the City of Windsor ("Windsor") to oppose the construction of the Span.

24. The agreement by Gowlings to represent Windsor to oppose construction of the Span placed Gowlings in a direct conflict with its representation of and contract with DIBC.

25. Specifically, on September 14, 2006, Estrin submitted to the United States Coast Guard a letter on behalf of Windsor, attacking the plans of DIBC with respect to the Span, and attacking the credibility and trustworthiness of DIBC and its officers, directors, employees and agents concerning the Span. (**Ex. A**, the "Estrin Letter".)

26. In direct contravention of the other services and work being performed by Gowlings on behalf of DIBC, the Estrin Letter demands that the United States Coast Guard apply the National Environmental Policy Act to the Span construction, and requests that "the full environmental implications of this proposal are examined to ensure that an alternatives analysis . . . is carried out." (**Ex. A** at 14.)

27. Among other things that clearly are intended to undermine the efforts of DIBC with respect to the construction of the Span, the Estrin Letter claims that the Span application submitted to the United States Coast Guard was "Misleading", "Erroneous" and "Unreliable". (**Ex. A** at 17, 18, 24.)

28. Ultimately, the Estrin Letter concludes that the Span is "a proposal fraught with significant and adverse environmental consequences for the City and its residents." (**Ex. A** at 35.)

29. The Estrin Letter demands that any further actions with regard to the Span be "suspended" until a full Environmental Impact Statement is performed. (**Ex. A** at 35.)

30. Without question, the Estrin Letter relied on confidential and/or privileged information that was supplied to Gowlings by DIBC.

31. The Estrin Letter was intended to irrevocably damage the plans of DIBC to finance, develop and construct the Span.

32. The Estrin Letter, and other actions taken by Gowlings and Estrin, constitute a breach of Gowlings' contractual, professional and fiduciary obligations and duties to DIBC.

33. Until DIBC received the Estrin Letter, it was unaware of the relationship between Gowlings and Windsor.

34. For years, Windsor has opposed and hindered the development, maintenance and operation of the Ambassador Bridge by Plaintiffs and other Centra subsidairies.

35. Upon information and belief, Windsor opposes and hinders DIBC's development, maintenance and operation of the Ambassador Bridge because the Ambassador Bridge directly competes with Windsor's lucrative ownership interest in the tunnel connecting Windsor and Detroit.

36. Upon information and belief, Gowlings, through Estrin, is scheduled to represent Windsor at a hearing before the United States Coast Guard on November 21, 2006.

37. DIBC intends to oppose Windsor's position at the November 21, 2006 hearing.

38. Gowlings' representation of Windsor directly conflicts with the ethical obligations and duties owed to DIBC.

39. Gowlings' statements made in the Estrin Letter significantly damage and impede DIBC's interests not only with respect to the Ambassador Bridge and the Span, but in all of DIBC's business interests, holdings, and endeavors throughout the United States and Canada.

### Count I – Breach of Contract

40. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

41. There are binding and enforceable agreements between Plaintiffs on the one hand, and Gowlings on the other, that require Gowlings to zealously represent Plaintiffs' interests and

6

to maintain Plaintiffs' information in confidence. The agreements also require Gowlings to take all legally permissible action requested by Plaintiffs with respect to Gowlings' representation of their interests.

42. Plaintiffs have satisfied their obligations to Gowlings by paying or causing to be paid substantial fees to Gowlings for its representation.[2]

43. Gowlings has breached its obligations to Plaintiffs by representing Windsor in an action directly adverse to DIBC and by, among other things, submitting the Estrin Letter to the United States Coast Guard.

44. Upon information and belief, Gowlings has further breached its obligations to Plaintiffs by using the confidential and privileged information provided by Plaintiffs in its representation of Windsor against DIBC.

45. Gowlings' conduct, as described in this Complaint, constitutes a breach of the contracts and agreements between the parties.

46. Plaintiffs have been damaged by Gowlings breach in an amount in excess of $75,000.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, together with an award of interest, costs, attorney fees, and such equitable relief as the Court may find appropriate.

### Count II – Breach of Fiduciary Duties

47. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

---

[2] *See* note 1 *supra*.

48. At all times relevant to this claim, Gowlings represented Plaintiffs, and in that capacity had a fiduciary relationship with Plaintiffs. Because of the attorney-client relationship, Gowlings was an agent of Plaintiffs.

49. For years, Gowlings has cemented this fiduciary relationship because it has represented Plaintiffs with regard to the ownership, operation, development and maintenance of the Ambassador Bridge.

50. As legal counsel for Plaintiffs, Gowlings owed a fiduciary duty to Plaintiffs not to represent parties with interests adverse to Plaintiffs, and not to take action adverse to the interests of Plaintiffs.

51. As legal counsel for Plaintiffs, Gowlings owed fiduciary duties to Plaintiffs.

   a. Gowlings owed a duty not to disclose or use Plaintiffs' confidential and privileged information in its representation of parties with interests adverse to Plaintiffs.

   b. Gowlings owed a duty of loyalty which includes a duty not to take action contrary to the interests of Plaintiffs, not to take action for its own financial gain at the expense of Plaintiffs' interests, and not to take action for the financial gain of others at Plaintiffs' expense.

52. Gowlings breached its fiduciary duties by, among other things:

   a. representing Windsor in opposition to the Ambassador Bridge and the Span;

   b. representing Windsor in a proceeding which is directly adverse to Plaintiffs' interests;

8

  c.  disclosing confidential and privileged information related to Plaintiffs and the Span;

  d.  drafting and sending the Estrin letter; and

  e.  failing to disclose to Plaintiffs its relationship with Windsor.

53. As a direct and proximate result of Gowling's conduct, Plaintiffs have sustained damages, including but not limited to lost profits, lost time, lost opportunity and the loss of the expenditure of substantial funds by DIBC at a time when Gowlings purportedly was working on behalf of DIBC while at the same time it secretly was undertaking plans with Windsor to undermine the efforts of DIBC..

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, together with an award of interest, costs, attorney fees, and such equitable relief as the Court may find appropriate.

### Count III – Legal Malpractice

54. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

55. Plaintiffs on the one hand, and Gowlings on the other have an attorney-client relationship.

56. As counsel to and an agent of Plaintiffs, Gowlings has a duty to Plaintiffs to act as a reasonable attorney would have acted.

57. Gowlings breached its duty and breached its obligations under the Code of Ethics promulgated by the Law Society of Upper Canada by, among other things, failing to disclose its relationship with Windsor, disclosing confidential and privileged information, by taking action

contrary to the interests of Plaintiffs, by taking action for its own financial gain at the expense of Plaintiffs' interests, and by taking action for the financial gain of others at Plaintiffs' expense.

58. As a direct and proximate result of Gowling's breach, Plaintiffs have sustained damages, including lost profits.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, and against Defendants, together with an award of interest, costs, attorney fees, and such equitable relief as the Court may find appropriate.

             Respectfully submitted,

             DYKEMA GOSSETT PLLC

             By: s/Craig L. John
              Craig L. John (P27146)
              Thomas J. Murray (P56331)
              Joseph A. Doerr (P66109)
              DYKEMA GOSSETT, PLLC
              39577 Woodward Avenue, Suite 300
              Bloomfield Hills, Michigan 48304-2820
              (248) 203-0714

Date: December 7, 2006

## JURY DEMAND

Plaintiff Detroit International Bridge Company hereby demands a trial by jury in this matter.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: s/Craig L. John
Craig L. John (P27146)
Thomas J. Murray (P56331)
Joseph A. Doerr (P66109)
DYKEMA GOSSETT, PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304-2820
(248) 203-0714

Date: December 7, 2006

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system.

A copy was sent by First Class U.S. Mail to Eugene Driker, Barris, Sott, Denn & Driker PLLC, 211 West Fort Street, 15th Floor, Detroit, Michigan 48226 and by e-mail to edriker@bsdd.com.

                              Respectfully submitted,

                              DYKEMA GOSSETT PLLC

                              By: s/Craig L. John
                                  Craig L. John (P27146)
                                  Thomas J. Murray (P56331)
                                  Joseph A. Doerr (P66109)
                                  DYKEMA GOSSETT, PLLC
                                  39577 Woodward Avenue, Suite 300
                                  Bloomfield Hills, Michigan 48304-2820
                                  (248) 203-0714

Date: December 7, 2006