# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CENTRA, INC., a Delaware Corporation and
DETROIT INTERNATIONAL BRIDGE
COMPANY, a Michigan Corporation,

        Plaintiffs,

vs.

DAVID ESTRIN, Individually, and
GOWLING LAFLEUR HENDERSON LLP,
a Canadian Limited Liability Partnership,

        Defendants.

Case No. 06-15185

Hon. Nancy G. Edmunds

Magistrate Judge Steven R. Whalen

---

Craig L. John (P27146)
Thomas J. Murray (P56331)
Joseph A. Doerr (P66109)
Attorneys for Plaintiffs
DYKEMA GOSSETT, PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304-2820
Phone: (248) 203-0714
Email: cjohn@dykema.com

Sharon M. Woods (P22542)
Kevin Kalczynski (P57929)
Melonie M. Stothers (P65344)
Attorneys for Defendants
BARRIS, SOTT, DENN & DRIKER, PLLC
211 West Fort Street, 15th Floor
Detroit, Michigan 48226
Phone: (313) 965-9725
Email: kkalczynski@bsdd.com

---

## PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS FROM REPRESENTING ANY PERSON OR ENTITY OPPOSING THE DEVELOPMENT OF A SECOND SPAN OF THE AMBASSADOR BRIDGE

Plaintiffs, CenTra, Inc. and Detroit International Bridge Company, through their

attorneys, Dykema Gossett PLLC, file this motion seeking to disqualify Defendants from

representing Windsor or any other person or entity opposing the development of a second span

of the Ambassador Bridge.  Defendants rely upon the arguments set forth in the attached brief in

support of their motion.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

Pursuant to L.R. 7.1, on March 12, 2007, counsel for Plaintiffs had a conference with counsel for Defendants seeking Defendants' concurrence in the following relief (1) Defendants' withdrawal as counsel for Windsor with respect to the Second Span or any other matter in which Windsor was adverse to Plaintiffs; (2) Defendants assurances that they would not disclose Plaintiffs' confidential information Defendants obtained through their representation of Plaintiffs; and (3) Defendants commitment to request the return of any confidential information that had already been disclosed.  Defendants refused to stipulate to any of this relief, thus necessitating the filing of this motion.

WHEREFORE, Defendants respectfully request that this Court grant their Motion to Disqualify and enter an order (1) prohibiting Defendants from continuing to represent Windsor, or any other person or entity, in opposition to the Second Span; (2) prohibiting Defendants from disclosing or otherwise revealing Plaintiffs' confidential information; and (3) compelling Defendants to request the return of any confidential information that has already been disclosed.

Respectfully submitted,

s/Thomas J. Murray
Attorneys for Plaintiffs
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI  48304-5086
Phone:  (248) 203-0806
E-mail:  tmurray@dykema.com
Thomas J. Murray (P56331)

Dated:  April 25, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Sharon M. Woods, Kevin Kalczynski, Melonie M. Stothers, Craig L. John and Joseph A. Doerr.

s/Thomas J. Murray
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI  48304-5086
Ph:  (248) 203-0806
E-mail:  tmurray@dykema.com
Thomas J. Murray (P56331)

BH01\739831.1
ID\TJMU

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CENTRA, INC., a Delaware Corporation and
DETROIT INTERNATIONAL BRIDGE
COMPANY, a Michigan Corporation,

        Plaintiffs,

vs.

DAVID ESTRIN, Individually, and
GOWLING LAFLEUR HENDERSON LLP,
a Canadian Limited Liability Partnership,

        Defendants.

Case No. 06-15185

Hon. Nancy G. Edmunds

Magistrate Judge Steven R. Whalen

---

Craig L. John (P27146)
Thomas J. Murray (P56331)
Joseph A. Doerr (P66109)
Attorneys for Plaintiffs
DYKEMA GOSSETT, PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304-2820
Phone: (248) 203-0714
Email: cjohn@dykema.com

Sharon M. Woods (P22542)
Kevin Kalczynski (P57929)
Melonie M. Stothers (P65344)
Attorneys for Defendants
BARRIS, SOTT, DENN & DRIKER, PLLC
211 West Fort Street, 15th Floor
Detroit, Michigan 48226
Phone: (313) 965-9725
Email: kkalczynski@bsdd.com

---

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS FROM REPRESENTING ANY PERSON OR ENTITY OPPOSING THE DEVELOPMENT OF A SECOND SPAN OF THE AMBASSADOR BRIDGE

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. iii

STATEMENT OF ISSUE PRESENTED ........................................................................ iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ....................................... v

INTRODUCTION ............................................................................................................ 1

BACKGROUND FACTS ................................................................................................. 2

    A.    Gowlings Represents Plaintiffs In Decades-Long Litigation Involving The Creation, Power and Authority Of The Ambassador Bridge. ....................... 2

    B.    Gowlings Represents Plaintiffs In 2005 and 2006 With Respect To Certain Tax Matters. ................................................................................................. 3

    C.    Gowlings Represents Plaintiffs In Their Efforts To Finance The Second Span. ..4

    D.    Gowlings Represents Windsor In Seeking To Prevent Or Delay The Construction Of The Second Span. ............................................................................. 4

    E.    When Gowlings Finally Discovers The Direct Conflict, They Attempt To Obtain a Retroactive Consent. ...................................................................................... 6

    F.    Defendants Inappropriately Fire Plaintiffs In An Attempt to "Cure" The Conflict. ............................................................................................................. 6

    G.    David McFadden, A Gowlings' Partner, Is Chairman Of The Board Of Directors Of Detroit & Canada Tunnel Corporation, The Entity Charged With Operating The Detroit-Windsor Tunnel, DIBC's Chief Competitor ............ 7

LAW AND ARGUMENT ................................................................................................ 8

    I.    GOWLINGS SHOULD BE DISQUALIFIED FROM REPRESENTING WINDSOR BECAUSE ITS CONTINUED REPRESENTATION VIOLATES MULTIPLE ETHICAL RULES ................................................................................. 8

        A.    Gowlings' Concurrent Representation Of Both Plaintiffs And Windsor Without Consulting Either Client Or Obtaining Their Consent Is A Clear Conflict Of Interest. ............................................................................... 9

        B.    Gowlings Could Not Ethically Obtain A Consent From Either Windsor Or Plaintiffs. .................................................................................................. 11

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

i

C.   David McFadden's Role As Chairman Of The Board Of Directors Of DCTC Compels Disqualification As Well. .........................................................12

II.   GOWLINGS' SELECTIVE WITHDRAWAL DOES NOT CURE GOWLINGS' ETHICAL VIOLATION NOR DOES IT PREVENT DISQUALIFICATION. .........13

REQUEST FOR RELIEF ..............................................................................................16

CERTIFICATE OF SERVICE .....................................................................................16

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anchor Packing Company v. Pro-Seal, Inc.*, 688 F.Supp. 1215 (E.D. Mich. 1988) ...................... 8

*Aueson v Reading Brass Co.*, 22 Mich. App. 505 (1970).................................................................. 8

*Evans & Luptak, PLC v. Lizza*, 251 Mich. App. 187 (2002)........................................................... 8

*General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704 (6th Cir. 1982) .................................. 8

*Harte Biltmore Ltd v. First Pennsylvania Bank*, 655 F.Supp. 419 (DC SFla 1987)..................... 14

*Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222 (6th Cir. 1988)............................. 8

*Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir. 1979) ....................................... 15

*Picker International Inc. v. Varian Associates Inc*, 869 F2d 578 (CA FC 1989).................... 13, 14

*R. v. Neil*, 2002 SCC 70 (2002) ................................................................................................ 11, 14

*Ransberg Corp. v. Champion Spark Plug Co*, 648 F Supp 1040 (DC NIll 1986)........................ 14

*S.D. Warren Co. v. Duff-Norton*, 302 F.Supp. 2d 762 (W.D. Mich. 2004)..................................... 8

*Strategem Development Corp v. Heron International NV*, 756 F Supp 789 (DC SNY 1991)..... 14

*Truck Insurance Exchange v Fireman's Fund Insurance Co*,
  8 Cal Rptr 2d 228 (Cal Ct App 1992).................................................................................... 14

*Universal City Studios, Inc. v. Reimerdes*, 98 F.Supp.2d 449 (S.D.N.Y. 2000)........................... 14

## Other Authorities

Canada, Law Society of Upper Canada Rules of Professional Conduct §§ 2.04(2)..................... 10

MI Eth. Op. RI-139, 1992 WL 510830....................................................................................... 13

MRPC 1.7 ...................................................................................................................... 8, 9, 13, 14

MRPC 1.9 ...................................................................................................................... 13, 14, 15

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

## STATEMENT OF ISSUE PRESENTED

Whether this Court should disqualify Defendants from representing the City of Windsor, or any person or entity opposing development of a Second Span of the Ambassador Bridge, where Defendants' dual representation of two separate clients with adverse interests regarding the same matter presents a direct and unresolvable conflict and where one of Defendants' partners is the Chairperson of the Board of Directors of the Plaintiffs' direct competitor?

Plaintiffs answer yes

Defendants answer no.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Evans & Luptak, PLC v. Lizza*, 251 Mich. App. 187 (2002)

*Melamed v. ITT Continental Baking Co.,* 592 F.2d 290 (6th Cir. 1979)

*R. v. Neil*, 2002 SCC 70 (2002)

MRPC 1.7

MRPC 1.9

MI Eth. Op. RI-139, 1992 WL 5108303

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

# INTRODUCTION

Remarkably, Defendants Gowling Lafleur Henderson LLP and David Estrin (collectively "Gowlings") continue to represent the City of Windsor ("Windsor") in Windsor's efforts opposing the development of a second span of the Ambassador Bridge ("Second Span"). Gowlings inappropriately and unethically continues this representation of Windsor despite the following facts. *First*, without consulting either Windsor or Plaintiffs or obtaining their consent[1], Gowlings engaged in representing Windsor in opposing the development of a Second Span *while at the same time* representing Plaintiffs in their efforts to fund and develop a Second Span. *Second*, even assuming *arguendo* that Plaintiffs consented to or waived their right to object to Gowlings representing Windsor (which they did not), Gowlings' dual representation of two separate clients with adverse interests regarding the same matter presents a direct and unresolvable conflict that cannot be waived or consented to by Plaintiffs or Windsor. Gowlings' continued representation of Windsor adverse to Plaintiffs is a blatant ethical violation that compels disqualification under both Michigan and Canadian law. *Third*, Gowlings undertook to represent DIBC in connection with the Second Span without disclosing to DIBC that David McFadden, a partner of Gowlings, is the Chairperson of the Board of Directors of the Detroit & Windsor Tunnel Corporation ("DCTC"), DIBC's direct competitor.[2] *Finally*, Gowlings compounded its ethical violations and violated well-settled law by selectively firing the

---

[1] As this Court is aware, Gowlings claims Dan Stamper, President of Detroit International Bridge Company ("DIBC") knew Gowlings was representing Windsor adverse to DIBC with respect to the Second Span. However, not even Gowlings contends it consulted with Plaintiffs prior to agreeing to represent Windsor, nor does Gowlings contend it obtained Plaintiffs' consent, as it was required to do under the applicable ethical rules.

[2] One is only left to wonder how, when Dale Hill ran his conflict check in the May-June of 2005 time frame, neither Mr. McFadden nor Mr. Estrin responded to advise Mr. Hill that they were in positions adverse to the interests of Plaintiffs. Instead, Mr. Hill determined that Plaintiffs were current or former clients of Gowlings and there was no impediment to his representation of Plaintiffs.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

1

disfavored client (i.e., Plaintiffs) while continuing to represent the favored client (i.e., Windsor) in an attempt to avoid disqualification.  For all of these reasons, Plaintiffs' motion to disqualify Gowlings should be granted, and an order should be entered preventing Gowlings from continuing to represent Windsor, or any other person or entity opposing development of the Second Span.

## BACKGROUND FACTS

Plaintiffs' Brief in Opposition to Defendants Motion for Summary Judgment [Docket #22] ("Opposition Brief") sets forth a detailed chronology of Gowlings' representation of Plaintiffs over an approximately twenty year period, and therefore will not be restated here. Instead, Plaintiffs highlight the representations by Gowlings that mandate its disqualification from continuing to represent Windsor.

**A.     Gowlings Represents Plaintiffs In Decades-Long Litigation Involving The Creation, Power and Authority Of The Ambassador Bridge.**

As described in greater detail in the Opposition Brief, from 1985 to 1992 Gowlings represented Plaintiffs in litigation involving Canada's attempt to take possession, ownership and control of the Canadian half of the Ambassador Bridge from CenTra without just compensation pursuant to the Foreign Investment Review Act ("FIRA Litigation").  During this representation, Plaintiffs provided Gowlings with confidential information regarding Plaintiffs' business and operations, including but not limited to a detailed memorandum ("Goodman Memo") containing attorney-client communications and attorney work product that discusses the very heart of DIBC's business - the history, ownership, rights and control of the Ambassador Bridge.  (Ex. 1, Moran Decl., ¶¶ 4, 5 and 11), Ex. 2, Binavince Decl., ¶ 4 and Opposition Brief, pp. 4-6, regarding the "Goodman Memo").  Gowlings representation of Plaintiffs in the FIRA Litigation ended in 1992, but as set forth by former Gowlings' partner, Emilio Binavince, who worked on

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

the FIRA Litigation, Gowlings retained the Goodman Memo and other documents related to the representation. (Ex. 2, Binavince Decl., ¶ 5). Gowlings continued to represent Plaintiffs on a wide range of matters over the course of the next decade. *See* Opposition Brief, p. 6.

### B.    Gowlings Represents Plaintiffs In 2005 and 2006 With Respect To Certain Tax Matters.

In the Spring of 2005 Gowlings began representing Plaintiffs and their subsidiaries[3] with respect to certain tax controversies with the Canada Revenue Agency ("CRA"). (Ex. 3, Calderone Decl., ¶ 3). Dale Hill, formerly with the CRA and now a Gowlings partner, states that he ran a conflict check for the new tax engagement and it revealed that CTC and DIBC "were either current or former clients." (Ex. 4, Hill Decl., ¶ 7). Hill does not say whether he determined if CTC and DIBC were current or former clients, or whether he even tried to do so; but we know from Gowlings own invoices that Plaintiffs were current clients. Hill also states "the search did not reveal that Gowlings was representing any clients adverse to Stamper, CTC or DIBC." *Id.* at ¶ 7). This statement is remarkable given David Estrin's unabashed claim that he was openly and adversely representing Windsor against DIBC. It is further startling that David McFadden, the Chairperson of the Board of Directors of DCTC did not alert Mr. Hill to his business adversity to Plaintiffs. Apparently, Estrin's representation of Windsor, allegedly adverse to DIBC in 2002-2005, was not as adverse as Estrin perceived since his own partner was not aware of such adversity, and Gowlings' own conflict check did not reflect such adversity. Moreover, apparently the conflict check system at Gowlings is so porous or so ignored that Mr. McFadden's adverse relationship went unnoticed or unreported as well.

---

[3] Canadian Transit Company ("CTC") is a wholly owned subsidiary of Detroit International Bridge Company ("DIBC") and DIBC is a wholly owned subsidiary of Plaintiff CenTra, Inc. ("CenTra"). Gowlings is well aware of these relationships due to its representation of these entities, and indeed has documented these relationships in submissions made to the CRA.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

C.    **Gowlings Represents Plaintiffs In Their Efforts To Finance The Second Span.**

Gowlings' own declarations demonstrate that in November of 2005, Gowlings began assisting Plaintiffs with respect to issuing bonds to finance the Second Span. Dale Hill and Tim Wach, another partner of Gowlings and a tax lawyer, met with Fred Calderone and other representatives of CenTra in November of 2005 at CenTra's offices in Warren, Michigan. (Ex. 5, Wach Decl., ¶¶ 2-5). According to Wach, at the meeting a $700-800 million bond offering on the Ambassador Bridge was discussed to finance the Second Span. *Id.* at ¶ 8. Wach states that he gave legal advice and suggested that some of the bond offering occur in Canada through CTC in order to mitigate certain Canadian tax consequences if the bond offering were done exclusively in the U.S.[4] *Id.* at 7. In essence, Wach solicited additional work for Gowlings from Plaintiffs through his suggestion. Wach concedes that he did not conduct a conflict check upon opening the bond representation matter. *Id.* at ¶ 9. Without question, by late 2005 or early 2006 Gowlings was representing Plaintiffs in their efforts to finance the Second Span of the Ambassador Bridge. *Id.* at ¶ 8. Gowlings continued this work, and its work regarding the tax controversies, until December 2006, after this lawsuit was filed.

D.    **Gowlings Represents Windsor In Seeking To Prevent Or Delay The Construction Of The Second Span.**

On September 14, 2006, Estrin submitted a letter to the U.S. Coast Guard on behalf of Windsor attacking the plans and development of DIBC with respect to the Second Span, and attacking the credibility and trustworthiness of DIBC concerning the Second Span. (Ex. 6, the "Estrin Letter".) Estrin's intent to undermine the efforts of DIBC with respect to the construction of the Second Span are made clear when he calls DIBC's application "Misleading,"

---

[4] For a complete description of the bond work being performed by Gowlings, please *see* the Declaration of Fred Calderone at ¶¶ 7-11, Ex. 3.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

"Erroneous" and "Unreliable." *Id.* at pp. 17, 18, 24.) Ultimately, the Estrin Letter concludes that the Second Span is "a proposal fraught with significant and adverse environmental consequences for the City and its residents." *Id.* at 35.

Estrin concedes that "*[u]ntil a few weeks before Centra filed this lawsuit, I was unaware that Centra, DIBC, or CTC had retained Gowlings on any other matter.*" (Ex. 7, Estrin Decl., ¶ 20). Estrin makes this claim in an apparent attempt to absolve Gowlings on the issue of sharing the confidences of Plaintiffs, but instead this statement irrefutably proves that (1) Estrin did not run a conflict check before agreeing to represent Windsor; and/or (2) Gowlings' conflict check system is so porous that it failed to detect the numerous representations by Gowlings of Plaintiffs for over twenty years. Plaintiffs have documented at least 9 representations of Plaintiffs and its subsidiaries from 1985-2006, yet Estrin openly admits he knew of none of these representations. This questions whether Gowlings has a conflict check system of any kind.

In addition, the Estrin Letter demonstrates that Gowlings used DIBC's previously obtained client confidences. The Estrin letter states, among other things:

> Gowlings has commissioned extensive historical and archival research with respect to the statutory and executive approvals granted by the Congress of the United States and the Parliament of Canada to the Ambassador Bridge, as well as in respect of the specific plans, drawings and rights-of-way approved by officials of the federal government in the United States and Canada for the current Ambassador Bridge.

(Ex. 6, p. 10). Estrin goes on to describe additional documents with respect to the creation of the Ambassador Bridge and the incorporation of CTC. *Id.* at p. 11. Both Patrick Moran, U.S. counsel for Plaintiffs in the FIRA Litigation, and Emilio Binavince, a former Gowlings' partner who handled the FIRA Litigation in Canada for Plaintiffs, unequivocally state that the documents and information described above are consistent with the documents and information contained in the privileged Goodman Memo. (Ex. 1, Moran Decl., ¶¶ 17-19; Ex. 2, Binavince Decl., ¶ 6).

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

Regardless, it is undisputed that Gowlings was simultaneously representing the Plaintiffs in their efforts to finance the Second Span and Windsor in its efforts to delay, hinder or derail the development of the Second Span, as well as directing the efforts of DCTC to compete with DIBC.

> **E.**   **When Gowlings Finally Discovers The Direct Conflict, They Attempt To Obtain a Retroactive Consent.**

On November 20, 2006, one day before this lawsuit was served on Gowlings, Scott Jolliffe, Gowlings' National Managing Partner, attempted to address the direct conflict created by Gowlings representation of Plaintiffs and the City of Windsor. (Ex. 8). Jolliffe states "in order to continue to act on behalf of CTC with respect to the tax and transfer pricing services and the additional matter related to a bond issue . . . the *mutual* consent of CTC and Windsor must be obtained."[5] *Id.* Jolliffe describes the ongoing matters for both clients as unrelated, but it is clear from the Declaration of Tim Wach, Gowlings' own partner, that the bond work was to finance the development of the Second Span, the same Second Span Gowlings is opposing on behalf of Windsor. (Ex. 5, Wach Decl., ¶ 8).

> **F.**   **Defendants Inappropriately Fire Plaintiffs In An Attempt to "Cure" The Conflict.**

On December 8, 2006, Gowlings informed Plaintiffs that it would no longer represent them. (Ex. 9). Gowlings has taken the untenable position that it can continue to represent Windsor in opposing the Second Span *despite the fact that Gowlings represented Plaintiffs on the same matter, and that the parties have interests that are directly adverse.* Gowlings' solution for "curing" this conflict is to drop Plaintiffs as a client and continue to represent Windsor.

---

[5] The "bond issue" referenced in Jolliffe's letter is the financing for the Second Span. *See* Declarations of Fred Calderone and Timothy Wach.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

Gowlings' continued representation of Windsor and refusal to withdraw is a blatant violation of both Michigan and Canadian law and ethical rules.  Plaintiffs sought to have Gowlings withdraw as counsel for Windsor by filing this lawsuit, and then by separately requesting Gowlings to withdraw.  Not only has Gowlings refused to withdraw, but it will not even provide assurances via a stipulated order that it will not reveal the client confidences of Plaintiffs.  Therefore, Plaintiffs were left with no choice but to seek Gowlings' disqualification with respect to its continued representation of Windsor, and any other person or entity opposing development of the Second Span.

     **G.**     **David McFadden, A Gowlings' Partner, Is Chairman Of The Board Of Directors Of Detroit & Canada Tunnel Corporation, The Entity Charged With Operating The Detroit-Windsor Tunnel, DIBC's Chief Competitor.**

David McFadden, a partner of Gowlings, lists on his resume that he is the Chairman of the Board of DCTC, the entity that operates the Detroit-Windsor Tunnel, a direct competitor of the Ambassador Bridge.  *See* Ex. 10, Resume of David McFadden taken from the Gowlings website.  Stated plainly, Mr. McFadden, a partner in Gowlings, a law firm that has highly confidential information with respect to the operation, development plans and make up of the Ambassador Bridge, is making strategic and operational decisions on how to best take business away from DIBC in favor of the Detroit-Windsor Tunnel.  One of Mr. McFadden's roles in chairing the entity that operates the Detroit-Windsor Tunnel is to increase business at the Tunnel by attracting travelers away from the Ambassador Bridge and to the Tunnel.  This job is made easier since Gowlings has the blueprint of how DIBC operates the Ambassador Bridge.

**LAW AND ARGUMENT**

**I.      GOWLINGS SHOULD BE DISQUALIFIED FROM REPRESENTING WINDSOR BECAUSE ITS CONTINUED REPRESENTATION VIOLATES MULTIPLE ETHICAL RULES.**

"The power to disqualify an attorney from a case is 'incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession.'" *S.D. Warren Co. v. Duff-Norton*, 302 F.Supp. 2d 762, 766 (W.D. Mich. 2004) (citations omitted). Disqualification of an attorney is required when representation would be a violation of the rules of professional responsibility. *See Aueson v Reading Brass Co.*, 22 Mich. App. 505 (1970). Attorneys are officers of the court, which is obliged to oversee and enforce the ethical conduct of its officers. *See Evans & Luptak, PLC v. Lizza*, 251 Mich. App. 187, 194 (2002); *Anchor Packing Company v. Pro-Seal, Inc.*, 688 F.Supp. 1215, 1218 (E.D. Mich. 1988) ("[t]he Sixth Circuit Court of Appeals looks upon the Canons of Ethics with great seriousness."). In addition, a motion to disqualify is the appropriate mechanism for a party to bring to the attention of the court a rules violation. *See DeBiasi v. Charter County of Wayne*, 284 F.Supp. 2d 760, 770 (E.D. Mich. 2003); *see also* Comment to MRPC 1.7 ("Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question.").

"When confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of its choice." *S.D. Warren Co.*, *supra* at 766 (citing *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988)). "In order to resolve these competing interests, the courts must balance the interest of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *Id.* at 766-67 (citing *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 715 (6th Cir. 1982)).

_DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

Here, disqualifying Gowlings is not even a close call because Gowlings represented both Plaintiffs and the City of Windsor on the same matter, at the same time, and these parties had competing interests.

**A.      Gowlings' Concurrent Representation Of Both Plaintiffs And Windsor Without Consulting Either Client Or Obtaining Their Consent Is A Clear Conflict Of Interest.**

MRPC 1.7 prohibits Gowlings' representation of the City of Windsor unless a disinterested lawyer would reasonably believe the representation would not adversely affect the relationship with Plaintiffs, and both clients consent:

> (a) A lawyer shall not represent a client if the representation will be directly adverse to another client, unless:

> (1) the lawyer reasonably believes the representation will not adversely affect the other client; and

> (2) each client consents after consultation.

Gowlings' own statements indisputably establish that Gowlings was representing Plaintiffs with respect to financing for the Second Span, and contemporaneously represented Windsor in opposition to the Second Span. *See* Ex. 5, Wach Decl., ¶ 8 and Ex. 6, Estrin Letter.  In other words, Gowlings directly violated MRPC 1.7 (a) when it represented both DIBC and Windsor with respect to the same matter when those parties had competing interests.

In developing the Second Span, there are three essential aspects: (1) government approval; (2) financing; and (3) the actual construction.  (Ex. 11, Stamper Decl., ¶ 6).  As to the first aspect, in September 2006, Gowlings was actively representing Windsor in opposing government approval for the Second Span.  (Ex. 6, Estrin Letter).  As to the second aspect, Gowlings was actively consulting Plaintiffs in 2005 and 2006 with respect to corporate restructuring issues and other matters related to obtaining financing for the Second Span.  (Ex. 5, Wach Decl., ¶¶ 5, 8).  These facts present a classic situation where the law firm is representing

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

9

opposing clients on the same matter, which is not permitted under the laws of any jurisdiction,

and certainly is not permitted under Michigan or Canadian law.[6]

Although the prohibition against representing two clients with directly adverse interests is

one of the more basic and intuitive ethical principles, the Declarations of Plaintiffs' experts,

Peter Henning and Bruce Hay, confirm this logical conclusion:

- Gowlings' representation of Windsor in opposition to the second-bridge proposal constitutes an extraordinary conflict of interest. Gowlings has literally been on both sides of the matter of the disputed bridge proposal: from mid-2005 until the commencement of this case, it was working on financing, tax and corporate restructuring for DIBC's plan to build the second bridge; and during the same time it has been working on, and continues to work on, Windsor's effort to defeat the second-bridge project. (Ex. 12, Hay Decl., ¶ 31).

- Gowlings is representing both sides in the same matter, which is forbidden by the MRPC, Model Rules, and Rules of Professional Conduct. The representation of Centra relates to obtaining financing for the second structure for the Ambassador Bridge while Gowlings represented a primary opponent of the second structure. This dual representation requires the disqualification of the firm absent a waiver from both clients. There is no information that either Centra or the City of Windsor agreed to the representation of the opposing party, and the November 20 letter concedes there was no consent by Centra to the representation, even if a reasonable lawyer would conclude that such consent was in the client's best interest. (Ex. 13, Henning Decl., ¶ 32).

Therefore, Defendants' dual representation of the City of Windsor, in their efforts to stop

government approval for and the construction of the Second Span of the Ambassador Bridge,

and Plaintiffs, in their efforts to finance the Second Span, is a direct and unresolvable conflict.

---

[6] *See, e.g.*, Canada, Law Society of Upper Canada Rules of Professional Conduct §§ 2.04(2) ("A lawyer shall not advise or represent more than one side of a dispute") and 2.04(3)("A lawyer shall not act or continue to act in a matter when there is or is likely to be a conflicting interest unless, after disclosure adequate to make an informed decision, the client or prospective client consents.")

**B.**     **Gowlings Could Not Ethically Obtain A Consent From Either Windsor Or Plaintiffs.**

Gowlings will undoubtedly argue that Plaintiffs waived their right to object to Gowlings' representation of Windsor with respect to the Second Span. Gowlings misses the point. Even if one assumes Plaintiffs waived or gave their consent (which they did not) [7], Gowlings representing both Windsor and Plaintiffs with respect to the same matter presents a conflict so severe that it would be unethical and unprofessional for Defendants to even ask for such consent. *See* Michigan Ethics Opinion RI-108 (Dec. 3, 1991)("There 'are situations where concurrent representation is impermissible even with client consent, because the conflict is so intense that concurrent representation would entail an impaired relationship with one or more of the clients, making it unreasonable even to ask for their consent.'") As the Supreme Court of Canada succinctly stated: "[t]he law firm, as fiduciary could not serve two masters at the same time." *R. v. Neil*, 2002 SCC 70 (2002) at para. 3.

Despite this clearly non-consentable waiver situation, Gowlings still sought an "after the fact" waiver on November 20, 2006 when Scott Jolliffe sent his letter to Plaintiffs. Of course, Plaintiffs did not provide the after the fact consent sought, and Gowlings then compounded its ethical violations by withdrawing as counsel for Plaintiffs. [8] Before inappropriately withdrawing, Mr. Jolliffe's actions further exemplified why a law firm should not engage two clients on the same matter with opposing interests. After the conflict was brought to the attention of Gowlings,

---

[7] Plaintiffs did not consent to or otherwise waive their right to object to Gowlings representing Windsor with respect to the Second Span. For a complete description of the facts and case law supporting this position please see Plaintiffs' Opposition Brief. Additionally, it is clear that Plaintiffs did not know of Gowlings' representation of Windsor with respect to the Second Span until after they received the Estrin Letter in September 2006. *See* Ex. 11, Stamper Decl., ¶ 7, Ex. 3, Calderone Decl., ¶ 4.

[8] This commonly called "hot potato" ethical violation is discussed in Section II, *infra*.

11

Mr. Jolliffe suggested in a meeting with Dan Stamper that Jolliffe could have David Estrin "ease up" or "lighten up" on DIBC in Estrin's representation of Windsor.  (Ex. 11, Stamper Decl. at ¶ 12).  This proposed "solution" demonstrates how a law firm cannot ethically fulfill its duties to two clients with competing positions on the same matter.

The Declarations of Plaintiffs' experts, Peter Henning and Bruce Hay, both confirm that Defendants cannot ethically seek the consent of either Plaintiffs or the City of Windsor under these facts:

- This state of affairs constitutes such a direct and unresolvable conflict that, in my opinion, it would be unethical and unprofessional to be representing Windsor in this matter even with explicit client consent.  I cannot imagine that a client, informed of the conflict, would actually give consent under such circumstances. Moreover, as I will discuss below, there is no evidence that DIBC *was* informed or gave its consent to (or "waived") the conflict.  But in any event, it is well settled that, regardless of client consent, a lawyer may not represent conflicting interests under circumstances that make effective representation of a client unlikely.  (Ex. 12, Hay Decl., ¶ 32).

- ....[C]lient consent is available only if a reasonable lawyer would believe that the representation would not adversely affect the relationship with the other client. The diametrically opposed positions of Centra and the City of Windsor, and Gowlings' deep involvement in both sides of the issue, means that a reasonable analysis would conclude that Centra's consent would not be in its best interests and so should not be sought.  (Ex. 13, Henning Decl., ¶ 33.)

Therefore, although Defendants never obtained Plaintiffs' consent, their retroactive attempt to do so was ethically improper.

**C.    David McFadden's Role As Chairman Of The Board Of Directors Of DCTC Compels Disqualification As Well.**

Mr. McFadden, a partner with Gowlings, is the Chairman of the Board of Directors of DCTC, the entity that operates the Detroit-Windsor Tunnel, DIBC's chief competitor. McFadden's role at DCTC was never disclosed to DIBC when Dale Hill began tax and transfer

pricing work for Plaintiffs in the Spring of 2005 or any time thereafter.  Plaintiffs' expert Bruce

Hay summarizes the problem best:

> If a member of the firm has a financial stake in the client's competitor, this creates incentives for the firm to work against the client's interests, and perhaps to use client confidences in a manner that harms the client. Clients need to be assured that they will know of any such financial stake, so that they can seek representation elsewhere. If clients fear that their lawyers may have undisclosed financial interests adverse to them, clients will understandably be nervous about fully confiding in their lawyers. These professional precepts are not controversial. Further, it is the responsibility of the lawyer to inform the client of the adverse financial stake. This is literally hornbook law. See, e.g., Wolfram, Modern Legal Ethics 484 (1986). The lawyer may not wash his hands of the problem by leaving it up to the client to check up on the lawyer's financial interests, or to assume the client somehow knows of the lawyer's financial interests.

(Ex. 12, Hay Decl., ¶ 49).

Professor Hay goes on to conclude that DIBC will naturally fear that whatever financial

information it confided to the Gowlings lawyers who helped on the tax and bonding work with

respect to the Second Span will now find its way into the campaign to kill the Second Span.  *Id.*

at ¶ 50.  Professor Hay opines that Gowlings should be barred from representing Windsor.  *Id.* at

55.

## II.    GOWLINGS' SELECTIVE WITHDRAWAL DOES NOT CURE GOWLINGS' ETHICAL VIOLATION NOR DOES IT PREVENT DISQUALIFICATION.

Gowlings will presumably argue that since their discovery of the conflict they have

"cured" the conflict by dropping Plaintiffs as a client.  This act, however, does not cure

Gowlings' continuing ethical violation because "courts that have considered the issue have held

that a law firm will not be allowed to drop a client in order to shift resolution of the conflicts

question from Rule 1.7 dealing with current clients, to the more lenient standard in Rule 1.9

dealing with former clients."  MI Eth. Op. RI-139, 1992 WL 510830 (citing *Picker International*

*Inc. v. Varian Associates Inc*, 869 F2d 578 (CA FC 1989); *Strategem Development Corp v.*

DYKEMA GOSSETT-A PROFESSIONAL LIMITED LIABILITY COMPANY-39577 WOODWARD AVENUE-SUITE 300-BLOOMFIELD HILLS, MICHIGAN 48304

13

*Heron International NV*, 756 F Supp 789 (DC SNY 1991); *Harte Biltmore Ltd v. First*

*Pennsylvania Bank*, 655 F.Supp. 419 (DC SFla 1987); *Truck Insurance Exchange v Fireman's*

*Fund Insurance Co*, 8 Cal Rptr 2d 228 (Cal Ct App 1992)). "To hold otherwise would allow

such unethical behavior to continue unrestricted because a law firm could always convert a

present client into a former client merely by seeking to withdraw after suing a present client."

*Id.* (citing *Ransberg Corp. v. Champion Spark Plug Co*, 648 F Supp 1040, 1044 (DC NIll

1986)).[9]

The prohibited attempt to shift resolution of the conflicts question from Rule 1.7 dealing

with current clients to the more lenient standard in Rule 1.9 dealing with former clients is

commonly referred to as the "hot potato" principle:

> an attorney cannot avoid disqualification … [when faced with a direct conflict] merely by "firing" the disfavored client, dropping the client like a hot potato, and transforming a continuing relationship to a former relationship by way of client abandonment. Indeed, the offense inherent in taking on the conflicting representation is compounded by seeking to "fire" the client in pursuit of the attorney's interest in taking on a new, more attractive representation. If, as one judge has written, "the act of suing one's client is a 'dramatic form of disloyalty,'" what might be said of trying to drop the first client in an effort to free the attorney to pursue his or her self-interest in taking on a newer and more attractive professional engagement?

*Universal City Studios, Inc. v. Reimerdes*, 98 F.Supp.2d 449, 453 (S.D.N.Y. 2000). *See* Ex. 13,

Henning Declaration, ¶31 (citing *Picker*, *supra*) ("Terminating representation does not

necessarily mitigate the previous conflict of interest from the representation of adverse parties in

the same matter.").

---

[9] Canadian law is of no help to Gowlings. The Supreme Court of Canada has held "a lawyer may not represent one client whose interests are directly adverse to the immediate interests of another client - - *even if the two mandates are unrelated* - - unless both clients consent after receiving full disclosure (and preferably independent legal advice), and the lawyer reasonably believes that he or she is able to represent each client without adversely affecting the other." *Neil*, *supra* at ¶ 29.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE·SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

Therefore, once Plaintiffs raised the conflict with Gowlings, Gowlings should have

withdrawn from representing both Plaintiffs and Windsor.  (Ex. P, Henning Decl., ¶¶ 32, 34)

(citing *Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir. 1979), where the Sixth

Circuit stated that "[i]f the representation is against an existing client, not just a former one, the

balance shifts even more significantly toward disqualification.").

Even if Gowlings were permitted to unethically make Plaintiffs a "former client,"

Gowlings still would not be permitted to represent Windsor adverse to Plaintiffs with respect to

the Second Span.  MRPC 1.9 states:

> (a)  A lawyer who has formerly represented a client in a matter shall not thereafter
> represent another person in the same or a substantially related matter in which that
> person's interests are materially adverse to the interests of the former client unless
> the former client consents after consultation.

It cannot reasonably be disputed that Gowlings' representation of Plaintiffs with respect to

financing the Second Span is the same or substantially related matter as Gowlings'

representation opposing the development of the Second Span.  Gowlings own declarations state

as much.  Therefore, Gowlings may not be permitted to continue to represent Windsor even if

Plaintiffs are former clients.

Gowlings' recalcitrance is further highlighted by its refusal to stipulate to an Order

stating that it will not disclose the confidential information it obtained from Plaintiffs to Windsor

or other third parties.  On March 15, 2007, Plaintiffs sought concurrence via a stipulated order

preventing such conduct, but Gowlings refused to stipulate to such relief.  Gowlings also refused

to commit to an Order stating it would request the return of any confidential information that had

been disclosed, claiming that no confidential information had been disclosed.  Regardless of

whether confidential information has been disclosed, it is these types of issues that give an

appearance of impropriety and damage the credibility of the legal system.  It is outrageous for

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

15

Gowlings to have obtained the most sensitive of financial and legal information about Plaintiffs,

and then continue to represent an adversary of Plaintiffs.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court prohibit Gowlings from representing the City

of Windsor or any other party with respect to the development of a Second Span of the

Ambassador Bridge.

<div style="margin-left: 40%;">

Respectfully submitted,

s/Thomas J. Murray
Attorneys for Plaintiffs
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI  48304-5086
Phone:  (248) 203-0806
E-mail:  tmurray@dykema.com
Thomas J. Murray (P56331)

</div>

BH01\735907.11
IDUAD

Dated:  April 25, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Sharon M. Woods, Kevin Kalczynski, Melonie M. Stothers, Craig L. John and Joseph A. Doerr.

<div style="margin-left: 40%;">

s/Thomas J. Murray
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI  48304-5086
Ph:  (248) 203-0806
E-mail:  tmurray@dykema.com
Thomas J. Murray (P56331)

</div>

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304