# EXHIBIT 1

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CENTRA, INC., a Delaware Corporation and DETROIT INTERNATIONAL BRIDGE COMPANY, a Michigan Corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>DAVID ESTRIN, Individually, and GOWLING LAFLEUR HENDERSON LLP, a Canadian Limited Liability Partnership,<br><br>    Defendants. | Case No. 06-15185<br><br>Hon. Nancy G. Edmunds<br><br>Magistrate Judge Steven R. Whalen |

| | |
|---|---|
| Craig L. John (P27146)<br>Thomas J. Murray (P56331)<br>Joseph A. Doerr (P66109)<br>Attorneys for Plaintiffs<br>DYKEMA GOSSETT, PLLC<br>39577 Woodward Avenue, Suite 300<br>Bloomfield Hills, Michigan 48304-2820<br>Phone: (248) 203-0714<br>Email: cjohn@dykema.com | Sharon M. Woods (P22542)<br>Kevin Kalczynski (P57929(<br>Melonie M. Stothers (P65344)<br>Attorneys for Defendants<br>BARRIS, SOTT, DENN & DRIKER, PLLC<br>211 West Fort Street, 15th Floor<br>Detroit, Michigan 48226<br>Phone: (313) 965-9725<br>Email: kkalczynski@bsdd.com |

**DECLARATION OF PATRICK A. MORAN**

PATRICK A. MORAN, under penalty of perjury, declares as follows:

1.     I was engaged as counsel for Detroit International Bridge Company, the Canadian Transit Company, Central Cartage Co., and Centra, Inc. (collectively, the "Clients") in relation to the litigation in Canada (the "FIRA Litigation") and in the United States concerning the attempts of Canada to take possession and ownership of the Canadian half of the Ambassador Bridge (the "Bridge") without due compensation from the inception of litigation brought by Canada in 1979, until its final settlement in 1992.

1

2. During the course of my engagement, there were two Canadian law firms intimately involved with the defense of the FIRA Litigation.

3. The first firm was Goodman & Goodman, from Toronto which worked extensively with employees and agents of the Clients to gather and analyze correspondence, documents and copies of statutes and regulations relating to the ownership and control of the Bridge.

4. An attorney from Goodman & Goodman prepared a definitive memorandum (the "Goodman Legal Memorandum") that compiled all of the documents, both public and private, that Goodman & Goodman believed to be the documents proper and relevant to the defense of the Clients to an encroachment upon their ownership and control by the City of Windsor, the Province of Ontario and the Dominion of Canada (collectively, the "Canadian Governmental Authorities").

5. During the course of the FIRA Litigation, and at the suggestion of the Crown Attorney for Canada to me, it was determined to replace Goodman & Goodman with another firm.

6. I personally interviewed Gordon Henderson of Gowling & Henderson, now Gowling Lafleur Henderson, LLP. ("Gowlings"), as lead counsel for the Clients, and it was determined by the Clients to engage Gowlings in the FIRA Litigation.

7. After the engagement, Gordon Henderson introduced me to Emilio S. Binavince, and later Ron Lunau, who were to become involved with Mr. Henderson in

representing the best interests of the Clients which were adverse to the positions taken by the Canadian Governmental Authorities.

8. During the course of the Litigation, several other professionals of Gowlings were involved, including associates and articling students, although my principal contacts were with Gordon Henderson, Emilio Binavince and Ron Lunau.

9. Gordon Henderson passed away several years ago. Emilio Binavince withdrew from Gowlings and practices in another firm. One of the other Gowlings attorneys intimately involved in representing the Clients was Ron Lunau, who is now a prominent partner at Gowlings.

10. The Gowlings website notes that Ron Lunau "is the head of Gowlings' procurement group . . . . Gowlings' involvement in public procurement extends back to the implementation of the original Canada-US Free Trade Agreement, and subsequently NAFTA. We are proud of Gowlings' contribution to the legal developments in this field."

11. After engaging Gowlings to represent the Clients, I delivered to them the Goodman Legal Memorandum, and all of the documents that Goodman & Goodman had used to reach their legal conclusions, to Gowlings.

12. I discussed a number of those documents with Gowlings' attorneys during the course of the Litigation and we referred back to those documents many times over the course of Gowlings' representation of the Bridge.

3

13. The Goodman Legal Memorandum contains attorney interpretations and conclusions regarding:

    a. The opinion of the counsel for the Bridge companies regarding why the Canadian government rejected an offer to sell to the government the Bridge and the Tunnel connecting Windsor and Detroit which had been offered to them;

    b. Parliamentary action on legislation affecting the ownership and control of the Bridge and regulation of its tolls;

    c. Letters from counsel of the Canadian Transit Company to its client on numerous topics;

    d. Letters from counsel of the Detroit International Bridge Company to its client;

    e. Corporate resolutions of the Canadian Transit Company;

    f. Corporate resolutions of the American Transit Company (predecessor to Detroit International Bridge Company);

    g. Meetings of the Board of Directors of the Canadian Transit Company;

    h. The manner of operation of the Bridge by the American and Canadian companies;

    i. The Joint Operating Agreements for the management of the Bridge by the American and Canadian companies;

    j. Orders of the federal courts in Canada concerning the capitalization and reorganization of the Canadian Transit Company;

    k. Orders-in-Council from the government of Canada;

    l. Inter-company debt between the American and Canadian companies;

    m. Legal support for the claim of jurisdiction over toll charges by the Board of Railway Commissioners;

    n. A proposed merger of the Bridge companies with a third-party suitor;

    o. A letter from counsel for the Bridge companies to the Department of Consumer and Corporate Affairs;

    p. Instructions given to American and Canadian counsel concerning legal action to be taken for a proposed merger of the American and Canadian

        Bridge companies;

  q.     Analysis of a memorandum between the attorney for the Bridge and the attorney for a suitor of the Bridge, and others.

14.     The Goodman Legal Memorandum refers and/or contains correspondence with counsel, such as:

  a.     Letter from counsel to Mr. Bowers of the Bridge companies dated February 9, 1927 dealing with the guarantee of securities by the Province of Ontario;

  b.     Letter from counsel to Mr. Bowers of the Bridge companies dated February 16, 1927 dealing with involvement of the Canadian Governmental Authorities in the ownership and financing of the Bridge;

  c.     Letter from Mr. Bowers to counsel dealing with seeking private financing in light of government recalcitrance;

  d.     Several letters by and between Mr. Bowers and the Honorable Paul Martin re opposition of the Canadian Governmental Authorities to the Bridge;

  e.     Letter from Mr. Bowers of the Bridge to the United States Ambassador to Canada dated August 4, 1964 regarding governmental support; and

  f.     Several letters by and between Mr. Bowers and the Counselor for Economic Affairs of the American Embassy in Canada relating to ownership of the Bridge.

15.     By describing the above content of the Goodman Legal Memorandum, and the documents attached thereto, the Clients are not waiving and do not intend to waive the attorney-client privilege, but simply make such description to highlight to the Court the privileged nature of the Goodman Legal Memorandum.

16.     The documents referred to, analyzed in and attached to the Goodman Legal Memorandum were used by lawyers from Gowlings in their representation of the Clients over a long course of time and the interpretations of Goodman set forth in the

5

Goodman Legal Memorandum were the starting points for the strategy used by Gowlings in representing the Clients.

17. On Page 11 of the 36 page letter from Gowlings to the United States Coast Guard, Gowlings stated:

> Gowlings has commissioned extensive historical and archival research with respect to the statutory and executive approvals granted by the Congress of the United States and the Parliament of Canada to the Ambassador Bridge, as well as in respect of the specific plans, drawings and rights-of-way approved by officials of the federal government in the United States and Canada for the current Ambassador Bridge.

18. That statement is an accurate description of the materials compiled, referred to and analyzed in the Goodman Legal Memorandum that I personally delivered to Gowlings.

19. I recently spoke by telephone with Emilio S. Binavince, formerly a member of Gowlings who was intimately involved in representing the Clients in the FIRA Litigations, along with his colleagues Gordon Henderson and Ron Lunau, and he verified my conclusion that the documents attached to the Goodman Legal Memorandum were used extensively in the representation of the Clients by Gowlings.

20. I also recently reviewed the profiles of attorneys on the Gowlings website. The website identifies David McFadden as both the Chairman of the Board of Detroit & Canada Tunnel Company ("Tunnel Company") and as a Partner of Gowlings. The Tunnel Company is a direct competitor of DIBC and the Ambassador Bridge.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

_Patrick A. Moran_
Patrick A. Moran

March 8, 2007