# EXHIBIT 5

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRA, INC., a Delaware Corporation and
DETROIT INTERNATIONAL BRIDGE
COMPANY, a Michigan Corporation

        Plaintiffs,

-vs-

DAVID ESTRIN, Individually, and
GOWLING LAFLEUR HENDERSON LLP,
a Canadian Limited Liability Partnership,

        Defendants.

Case No. 06-15185

Hon. Nancy G. Edmunds

Magistrate Judge Steven R. Whalen

---

**Attorneys for Plaintiffs:**
Craig L. John (P27146)
Thomas J. Murray (P56331)
Joseph A. Doerr (P66109)
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
Phone: (313) 568-6800
Email: cjohn@dykema.com

**Attorneys for Defendants:**
Sharon M. Woods (P22542)
Kevin Kalczynski (P57929)
Melonie M. Stothers (P65344)
Barris, Sott, Denn & Driker, PLLC
211 West Fort Street, 15th Floor
Detroit, Michigan 48226
Phone: (313) 965-9725
Email: kkalczynski@bsdd.com

---

**DECLARATION OF TIMOTHY WACH**

Timothy Wach, under penalty of perjury, states:

1. I have personal knowledge of the facts stated in this Declaration and I am competent to testify to them.

2. Since April of 1986, I have been a lawyer, licensed by the Law Society of Upper Canada.

3. Since 2001, I have been employed by Gowling Lafleur Henderson LLP ("Gowlings"). Since that time, I have been a Partner in Gowlings' Tax Department, resident in Gowlings' Toronto office. Currently, I am the Office Group Leader of Gowlings' Toronto Tax Practice. My practice is restricted exclusively to tax matters, with an emphasis on international taxation.

4. Sometime in November 2005, I was contacted by Dale Hill, who is the national leader of Gowlings' Transfer Pricing and Competent Authority Team and who is based in Gowlings' Ottawa office. At that time, Mr. Hill was representing Canadian Transit Company ("CTC"), a Centra, Inc. affiliate, on certain transfer pricing issues. Mr. Hill requested that I accompany him on a trip to Warren, Michigan to meet with Centra representatives in order to discuss the possibility of Gowlings advising Centra on tax planning matters.

5. On November 28, 2005, Mr. Hill and I met with Centra representatives including Fred Calderone, and representatives of Deloitte & Touche, who were Centra's tax advisors on tax matters in the United States (the "Initial Meeting"). The discussion at the Initial Meeting centered on Centra's plan to engage in a $700 to $800 million bond offering

2

in the United States to be secured by the assets of Detroit International Bridge Company ("DIBC"). At the time, the Centra representatives did not tell me the purpose of the bond offering.

6. My understanding, based on discussions with Centra representatives and organizational documents provided by them, is that: (A) DIBC is a wholly-owned subsidiary of Centra and DIBC's primary assets are its ownership interests in the Ambassador Bridge and related assets; (B) DIBC owns the Ambassador Bridge assets on the United States side of the Detroit River; (C) CTC is a wholly-owned subsidiary of DIBC; (D) CTC's primary assets are its ownership interests in the Ambassador Bridge and its related assets; (E) CTC owns the Ambassador Bridge assets on the Canadian side of the Detroit River and; (F) Dan Stamper is the President of both DIBC and CTC.

7. At the Initial Meeting with Centra representatives and Deloitte, I suggested that consideration be given that some of the proposed bond offering be undertaken in Canada through CTC in order to mitigate certain Canadian tax consequences that would occur if the bond offering were undertaken exclusively in the United States.

8. The Centra representatives agreed that this proposal should be investigated further and I began working on Canadian tax planning issues with respect to structuring a portion of the bond offering in Canada (the "Bond Representation"). The Bond Representation involved restructuring CTC and applying to the Canada Revenue Agency for certain tax rulings that would allow the proposed restructuring and bond offering to go forward while minimizing the potentially negative tax consequences. Later, in the course of

3

the Bond Representation, I was advised by Centra representatives that one of the potential uses of the funds to be raised through the bond offering was to finance an expanded or "twinned" Ambassador Bridge (the "Bridge Plan").

9. I did not initiate a new conflict search at the outset of the Bond Representation because the Bond Representation, like Mr. Hill's representation of CTC on transfer pricing issues, involved no adverse parties other than the Canada Revenue Agency.

10. From the time that Mr. Hill asked me to accompany him to the meeting in Warren, Michigan until the week of September 18, 2006, no one ever informed me, and I did not know, that David Estrin, another Gowlings partner based in Gowlings' Toronto office, was representing the City of Windsor in opposition to the Bridge Plan. During the week of September 18, 2006, I was contacted by Centra representatives who advised me that Mr. Estrin was representing Windsor in opposition to the Bridge Plan.

11. I know Mr. Estrin, but I have never had any contact with him about his representation of the City of Windsor in opposition to the Bridge Plan or my work on the Bond Representation. I have never provided Mr. Estrin with any information related to the Bond Representation.

12. On September 21, 2006, Fred Calderone caused his secretary to send me a copy of the September 14, 2006 letter than Mr. Estrin sent to the United States Coast Guard on behalf of Windsor opposing the Bridge Plan. Other than that document, and until I read Defendants' Brief In Support of Their Motion for Summary Judgment to which this Declaration is attached, I had never received or reviewed any information related to

4

Gowlings' representation of Windsor in opposition to the Bridge Plan.

13. After Centra and DIBC filed this lawsuit against Gowlings and Mr. Estrin, Gowlings sent CTC a letter on December 7, 2006 advising that Gowlings was withdrawing from its representation of CTC. A copy of that letter is attached to Defendants' Brief in Support of Their Motion for Summary Judgment as Exhibit 12.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January ___, 2007.

_____
Timothy Wach

0328526.02