# EXHIBIT 13

**Declaration of Peter J. Henning**

Peter J. Henning, under penalty of perjury, states:

1.   I am a Professor of Law at Wayne State University Law School in Detroit, Michigan. I have been a member of the faculty since August 1994, first as an Associate Professor of Law and, since 2002, a full Professor of Law.

2.   I teach the required law school course in Professional Responsibility & the Legal Profession. A substantial portion of the course focuses on the application of the Michigan Rules of Professional Conduct ("MRPC") and the Model Rules of Professional Conduct ("Model Rules").

3.   I have conducted research and written scholarly articles on the subject of legal ethics and the professional duties of lawyers in representing clients.

4.   I have reviewed documents filed in connection with *Centra, Inc. v. Estrin*, No. 06-15185 (E.D. Mich), including declarations, correspondence from Gowling Lafleur Henderson LLP ("Gowlings"), briefs, and appendices. I have also reviewed the MRPC and Model Rules, and Rule 2 of the Rules of Professional Conduct of the Law Society of Upper Canada ("Rules of Professional Conduct").

**Continuous Representation of Centra by Gowlings**

5.   Based on the review of the documents, Gowlings represented Centra, Inc. (collectively "Centra") from the early 1980s until December 2006. The representation included, among other things, the Detroit International Bridge Company ("DIBC") and Canadian Transit Corporation ("CTC"), which are the operating companies for the Ambassador Bridge between Detroit, Michigan, and Windsor, Ontario.

6.   Centra is interested in building a second bridge parallel to the Ambassador Bridge. The City of Windsor, Ontario, is opposed to the building of a second structure. David Estrin, a partner at Gowlings, represents the City of Windsor in seeking to prevent Centra from building the second structure, while the firm also represented Centra in matters related to building the second bridge.

7.   Gowlings first represented Centra in litigation begun in 1979 by the Government of Canada to take the Canadian half of the Ambassador Bridge with no compensation to Centra ("FIRA Litigation"). Centra eventually retained a predecessor firm of Gowlings to represent it in the litigation in Federal Court in Canada.

8.   Gowlings also represented Centra in a number of other matters since its retention in the FIRA Litigation, including: (1) a law suit by a Centra subsidiary from 1987 to 1990; (2) Note Financing representation in 1992-1993; (3) a collection matter from 1992 to 1994; (4) a trademark dispute in 1998; (5) a skip-trace matter in 2003; (6) contract litigation in 2005; (7) tax collection representation commenced in 2005.

9.   An attorney-client relationship does not necessarily end when a matter is completed. Clients, particularly business organizations, who retain a law firm

on a regular basis are viewed as current clients of the firm even if there is no pending matter on which the lawyers are then representing the business. Based on the continuing pattern of representation of Centra by Gowlings, Centra has been a current client of the firm since the retention in the FIRA Litigation until Gowlings terminated the representation in December 2006.

**FIRA Litigation Representation of Centra by Gowlings**

10.     Gowlings' representation of Centra in the FIRA Litigation involved issues related to the ownership and operation of the Ambassador Bridge, which are relevant to its most recent representation of the company on a proposal to finance a second structure parallel to the existing bridge.

11.     Centra provided confidential information and work product to Gowlings in the FIRA Litigation that had been created by its prior counsel as part of the representation. Among the items provided was the "Goodman Legal Memorandum" that included extensive documentation related to the legal position and theories of Centra and its subsidiaries, including information about the views of lawyers for the company regarding Canadian legislation and bilateral treaties between the United States and Great Britain that formed the basis for the legal defense in the action. Declaration of Patrick Moran ¶¶ 1, 11-14.

12.     The FIRA litigation settled in 1991. Among the attorneys at Gowlings who had direct dealings with the matter and were privy to confidential information was Ronald D. Lunau, the head of the Administrative and Public Law National Practice Group at Gowlings. Declaration of Patrick Moran ¶ 9.

13.     As discussed above in ¶ 8, Gowlings continued to represent Centra in various matters during and after the FIRA Litigation.

14.     Estrin has represented the City of Windsor since 2003, and claims that representation included matters related to, *inter alia*, the building of a second structure for the Ambassador Bridge. Estrin claims that since at least September 2004, the interests of the City of Windsor been adverse Centra. Estrin Declaration at 9-11

15.     Gowlings' client-matter database lists DIBC and CTC as current or former clients of Gowlings. Declaration of Dale Hill, ¶ 7. Mr. Hill's Declaration does not state whether he determined whether Centra was a current or former client, although the continuing nature of the representation makes it clear that Centra was a current client. Gowlings does not appear to have conducted a search of the database in connection with the representation of the City of Windsor to determine if the firm had a client adverse to the City of Windsor.

16.     A letter dated September 14, 2006, from Gowlings, written by Estrin, to the United States Coast Guard district commander in Cleveland, Ohio, on behalf of the City of Windsor expressed opposition to Centra building a second structure. The letter states at page 11:

We are enclosing with this submission certified copies of original documents obtained from the National Archives of the United States and the National Archives of Canada, as well as documents filed in the Land Registry Office in the City of Windsor, all of which documents demonstrate that the original Congressional approval for the Ambassador Bridge as well as the original Parliamentary approval in Canada are confined to a single bridge. There is no contemplation in the legislation either approved by Congress or by the Parliament of Canada that there would be more than one bridge at this location. The Congressional legislation as well as the Canadian legislation both refer to "a bridge" or "the bridge". There is no contemplation of multiple bridges. See in particular Attachments Vol.2, Part C, Tab 1 containing the 1921 Act of the Canadian Parliament "to incorporate the Canadian Transit Company" and which authorizes the company to construct and maintain a railway and general traffic bridge across the Detroit River from, at or near Windsor in the province of Ontario to the opposite side of the river in the State of Michigan".

17.   Confidential information received by Gowlings in the firm's earlier representation of Centra and its subsidiaries related to the same documents and issues regarding the legal status of the Ambassador Bridge under relevant statutes and treaties. The statement in the letter to the Coast Guard quoted above indicates that the representation of the City of Windsor by Gowlings opposing Centra and its subsidiaries involves a matter substantially related to the FIRA Litigation. Both matters concern the legal status of the Ambassador Bridge and the authority of its owner to operate the bridge, including the power to expand by building a second structure. Declaration of Patrick Moran ¶¶ 17-18.

18.   MRPC 1.7(b) states: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." Model Rule 1.7(a) is identical in all material respects. Rules of Professional Conduct 2.04(2) states: "A lawyer shall not advise or represent more than one side of a dispute."

19.   The confidential information Gowlings received from Centra in the FIRA Litigation relates to the firm's representation of the City of Windsor. Gowlings should not have commenced or continued any representation when confidential information it received from one client could be used for the benefit of another client, at least not without the consent of Centra. There is no evidence that Gowlings requested Centra's consent to represent the City of Windsor prior to the letter of November 20, 2006, from Gowlings' National Managing Partner, R. Scott Jolliffe.

20.   MRPC Rule 1.7(b)(1) does not permit client consent if a reasonable lawyer would conclude that the client would be adversely affected. The Comment to MRPC 1.7 states, "[W]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent." A reasonable lawyer could not conclude that a client would consent to the use of its confidential

information for another client to oppose a significant business plan that is viewed as crucial to the long-term economic viability of its enterprise.

21.  Even if it is determined that the representation of Centra by Gowlings ended prior to the firm being retained by the City of Windsor, and so Centra is a former client, the possession of confidential information from the former client prevents the representation of an adverse party in the same or a substantially related matter. MRPC 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Model Rule 1.9(a) is identical in all material respects. Rule 2.04(4) of the Rules of Professional Conduct provides: "A lawyer who has acted for a client in a matter shall not thereafter act against the client or against persons who were involved in or associated with the client in that matter: (a) in the same matter, (b) in any related matter, or (c) save as provided by subrule (5), in any new matter, if the lawyer has obtained from the other retainer relevant confidential information, unless the client and those involved in or associated with the client consent."

22.  In *In re Marks & Goergens, Inc.*, 199 B.R. 922 (Bankr. E.D. Mich. 1996), the United States Bankruptcy Court held that under MRPC 1.9(a) a matter is substantially related when "there are common factual questions, i.e., "if facts pertinent to problems for which the original legal services were sought are relevant to the subsequent litigation." (quoting *Anchor Packing Co. v. Pro-Seal, Inc.*, 688 F.Supp. 1215, 1221 (E.D.Mich.1988)). The court stated that if it "determines that a substantial relationship exists, a *presumption* is created that the attorney will use information received from the former client in the ethical obligation to vigorously represent the present client, thus violating the ethical obligations of loyalty and confidence." (emphasis added). The court noted that this presumption is "not rebuttable." *Id.* at 925. See also *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983).

23.  Under this analysis of a "substantially related" matter, Gowlings' former representation of Centra and its subsidiaries is substantially related to its current representation of the City of Windsor. Each matter concerns the authority of the owner of the Ambassador Bridge to operate a structure, and its power to undertake certain activities related to that operation, including the possibility of building a second structure. The prior representation by Gowlings may have involved issues that could be relevant to the current dispute between the City of Windsor and Centra, as shown by the discussion in Gowlings' September 2006 letter to the Coast Guard. Therefore, under MRPC 1.9(a) and Model Rule 1.9(a), the firm would be subject to disqualification unless it obtained a valid waiver from its former client.

24.  Rules of Professional Conduct 2.04(5) permits one lawyer in the firm to represent a client with an interest adverse to a former client in certain limited circumstances, including under 2.04(5)(b)(i) the "adequacy and timing of the measures taken to ensure that no disclosure of the former client's confidential information to the partner or associate having carriage of the new matter will

occur." At least one lawyer at Gowlings, Mr. Lunau, remains at the firm from the prior representation and presumably would have confidential information related to the former client, Centra. There is no information that Gowlings sought or obtained a waiver from Centra or its subsidiaries upon taking up the adverse representation of the City of Windsor. There is no information that the required measures were taken to ensure that no disclosure of Centra's confidential information to lawyers working on behalf of the City of Windsor.

25.     A lawyer is required to determine whether there is a conflict of interest, and take the steps necessary to obtain the waiver by informing the former client of the proposed representation. The Comment to MRPC 1.9 states, "A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client." A lawyer's obligation to determine whether a waiver is necessary continues during the course of the representation of another client, so that if a matter changes from one in which there is no adversity to the former client to one that is adverse, the consent must be obtained at that time. The Comment to Rules of Professional Conduct 2.04(3) states, "A lawyer should examine whether a conflict of interest exists not only from the outset but throughout the duration of a retainer because new circumstances or information may establish or reveal a conflict of interest."

26.     The usual remedy in cases involving a violation of the conflict of interest rules related to a current or former client is disqualification of the law firm, and such a violation can be evidence of a breach of fiduciary duty and malpractice.

**Current Representation of Centra by Gowlings**

27.     In June 2005, Centra retained Gowlings to represent the company and its subsidiaries regarding certain taxation issues in Canada. There was no disclosure to Centra that Gowlings would be representing it in the taxation matter and opposing it in the matter related to building the second structure for the Ambassador Bridge. Declaration of Fred Calderone ¶ 4.

28.     In November 2005, the scope of Gowlings representation of Centra expanded to include the possible issuance of bonds in Canada to finance the building of the second structure. The representation included a possible restructuring of CTC to take advantage of certain provisions of Canadian tax law, and these recommendations were made by Timothy Wach, a Gowlings attorney. Declaration of Timothy Wach ¶¶ 5-8.

29.     At the same time Gowlings was advising Centra on its plans to build a second structure for the Ambassador Bridge, the firm opposed Centra's plan by representing the City of Windsor in the same matter. A letter from Gowlings' National Managing Partner, Scott Jolliffe, to Centra, dated November 20, 2006, admits that Gowlings represented clients with opposing interests, stating that "the mutual consent of the City of Windsor and CTC must be obtained."

30.     Although Gowlings asserted in its letter that the representation of the City of Windsor and Centra involved "unrelated matters," the representation involved the same or a substantially related matter. Gowlings received confidential

financial, operational and legal knowledge about the Ambassador Bridge and Centra. Nine different professionals from Gowlings were involved in the representation of Centra related to the tax and bridge financing issues, and all received confidential financial and operational documents and information from Centra and its subsidiaries. Declaration of Fred Calderone ¶¶ 9-10.

31. MRPC 1.7(a) states: "A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation." Model Rule 1.7(a) is identical in all material respects. Rules of Professional Conduct 2.04(2) states: "A lawyer shall not advise or represent more than one side of a dispute." See *Neil v. The Queen*, [2002] 3 S.C.R. 631 ("The bright line is provided by the general rule that a lawyer may not represent one client whose interests are directly adverse to the immediate interests of another current client – *even if the two mandates are unrelated* – unless both clients consent after receiving full disclosure (and preferably independent legal advice), and the lawyer reasonably believes that he or she is able to represent each client without adversely affecting the other." (emphasis in original)).

32. Gowlings is representing both sides in the same matter, which is forbidden by the MRPC, Model Rules, and Rules of Professional Conduct. The representation of Centra relates to obtaining financing for the second structure for the Ambassador Bridge while Gowlings represented a primary opponent of the second structure. This dual representation requires the disqualification of the firm absent a waiver from both clients. There is no information that either Centra or the City of Windsor agreed to the representation of the opposing party, and the November 20 letter concedes there was no consent by Centra to the representation, even if a reasonable lawyer would conclude that such consent was in the client's best interest.

33. As discussed in ¶ 20 above, client consent is available only if a reasonable lawyer would believe that the representation would not adversely affect the relationship with the other client. The diametrically opposed positions of Centra and the City of Windsor, and Gowlings' deep involvement in both sides of the issue, means that a reasonable analysis would conclude that Centra's consent would not be in its best interests and so should not be sought.

34. The usual remedy in cases involving a violation of the conflict of interest rules related to representing and opposing a current client is disqualification of the law firm. In *Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir. 1979), the Sixth Circuit stated that "[i]f the representation is against an existing client, not just a former one, the balance shifts even more significantly toward disqualification." *Id.* at 292. Such a violation can also be evidence of a breach of fiduciary duty and malpractice.

35. On December 7, 2006, Gowlings informed Centra that it would no longer represent the firm. Declaration of Timothy Wach ¶ 13. Terminating representation does not necessarily mitigate the previous conflict of interest from the representation of adverse parties in the same matter. In *Picker*

*International, Inc. v. Varian Associates, Inc.*, 670 F.Supp. 1363 (N.D. Ohio 1987), aff'd 869 F.2d 578 (Fed. Cir. 1989), the District Court stated, "A firm may not drop a client like a hot potato, especially if it is in order to keep happy a far more lucrative client." Lawyers owe a fiduciary duty of loyalty to put a client's interest ahead of their own, and terminating one client due to a conflict of interest with another client can be a violation of that fiduciary duty.

36. In representing Centra related to obtaining financing for a second structure for the Ambassador Bridge, Gowlings obtained confidential information related to the operation of the Ambassador Bridge and Centra's plan for proceeding with that building program. Even if Centra were viewed only as a former client of Gowlings after the withdrawal in December 2006, the firm retains confidential information related to the matter in which it continues to represent an adverse party, the City of Windsor. As discussed above, absent Centra's consent, Gowlings cannot continue to represent a client (the City of Windsor) opposed to its former client (Centra) when it has confidential information on the same matter from the former client. Gowlings did not obtain a waiver from Centra to continue its representation of the City of Windsor, nor did take the required the measures prescribed by Rules of Professional Conduct 2.04(5)(b)(i) "to ensure that no disclosure of the former client's confidential information to the partner or associate having carriage of the new matter will occur."

37. The usual remedy in cases involving a violation of the conflict of interest rules related to a former client is disqualification of the law firm, and such a violation can be evidence of a breach of fiduciary duty and malpractice.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury that the foregoing is true and correct.

_____
Peter J. Henning

March 9, 2007.