UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRA, INC. and DETROIT
INTERNATIONAL BRIDGE COMPANY,                      Case No. 06-15185

    Plaintiffs,                                              Honorable Nancy G. Edmunds

v.

DAVID ESTRIN and GOWLING LAFLEUR
HENDERSON LLP,

    Defendants.
_____/

**ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [9], (2) DENYING DEFENDANT ESTRIN'S MOTION TO DISMISS AS MOOT [10], AND (3) DENYING PLAINTIFFS' MOTION TO DISQUALIFY AS MOOT [34]**

Pending before this Court are several motions. First, Defendant David Estrin and Defendant Gowling LaFleur Henderson LLP ("Gowlings") (collectively referred to as "Defendants") filed a motion for summary judgment. Then, Defendant Estrin filed his own alternative motion seeking to dismiss the claims against him for lack of personal jurisdiction. Both of these motions were filed on January 12, 2007. Following oral argument on those issues, Plaintiffs filed a motion on April 25, 2007, seeking to disqualify Defendants from representing the City of Windsor, Ontario.

Plaintiff CenTra, Inc.'s ("CenTra's") and Plaintiff Detroit International Bridge Company's ("DIBC's") (collectively referred to as "Plaintiffs") Amended Complaint[1] raised claims for breach of contract, breach of fiduciary duty and legal malpractice against

---

[1] Any further references to the "Complaint" refer to Plaintiffs' Amended Complaint.

Defendants arising out of the fact that Gowlings was representing Plaintiffs at the same time it was representing Windsor in a matter adverse to Plaintiffs.  In support of their joint motion for summary judgment, Defendants primarily argue that Plaintiffs waived the conflict of interest, but alternatively assert that Plaintiffs' do not have a valid claim because they have not suffered any damages.  Defendant Estrin's motion to dismiss is based upon his assertion that he does not have the requisite contacts with the state of Michigan for this Court to have personal jurisdiction over him.

In support of their recent motion to disqualify, Plaintiffs argue that the severity of this conflict compels Gowlings' removal from any representation of Windsor in its opposition of Plaintiff's plan to build a second span for the Ambassador Bridge.  For the reasons stated below, the Court GRANTS Defendants motion for summary judgment, DENIES AS MOOT Defendant Estrin's motion to dismiss, and DENIES AS MOOT Plaintiffs' motion to disqualify.

**I. FACTS**

Plaintiff CenTra is a diversified holding company generally involved in the transportation industry.  Plaintiff DIBC is one of CenTra's subsidiaries and owns the Ambassador Bridge (the "Bridge") on the U.S. side of the Detroit River.[2]  (Defs.' Mot. for Summ. J. (hereinafter, "Defs.' Mot.") at 2.)  Manuel "Matty" Maroun is CenTra's majority owner, and Dan Stamper serves as its president.  (*Id.*)  Defendant Gowlings is a large Canadian law firm with offices throughout that country, and Defendant Estrin is a partner in Gowlings' Toronto office.  (*Id.* at 3.)

---

[2] Canadian Transit Company ("CTC"), which is another one of CenTra's subsidiaries, owns the Canadian side of the Bridge, although that entity is not a party to this case.

Gowlings has represented CenTra and certain of its subsidiaries in a number of discrete legal matters, starting in 1985 and continuing until at least 1998. These included (1) a suit by the Canadian government against a CenTra subsidiary seeking to take possession and ownership of the Canadian side of the Bridge from 1985 to 1992, (2) a suit by a CenTra subsidiary against Pitney Bowes of Canada in 1987, (3) a suit by CenTra against Anixter for $57,000 in breach of contract damages in 1992, (4) assisting with a securities issuance by DIBC and CTC in 1992 and 1993, (5) a trademark dispute between 1998 and 2001, (6) collecting key man life insurance benefits in 2003, (7) a suit by a CenTra subsidiary against L.E. Walker for breach of contract in 2005, (8) advising CTC on certain Canadian tax law issues related to revenue recognition in 2005, and (9) advising Plaintiffs on a potential bond issuance to finance a plan to "twin" the Bridge by adding a second span next to the existing structure (the "Bridge Plan") in 2005 and 2006. (Pls.' Resp. at 4-12.)[3]

Defendants' representation of clients adverse to Plaintiffs during the periods mentioned above includes: (1) opposing CenTra's plan to build a new bridge between Ontario and New York on behalf of public agencies in that area during 2003 and 2004, (2) working for Windsor in opposing Plaintiffs' plan to expand the Bridge's deck and add toll booths (the "Site Plan") and reaching an eventual agreement regarding the Site Plan from 2004 through 2005, and (3) representing Windsor in opposition to Plaintiffs' Bridge Plan

---

[3]Although Plaintiffs raise all of these representations in their filings, only the bond arrangement representation beginning in November 2005 is truly at issue here. It is that representation which Plaintiffs claim was adverse to Defendants' work on behalf of Windsor opposing the Bridge Plan due to the fact that the bond proceeds were intended to fund construction of the new twin span. Defendant Estrin did not represent Plaintiffs with regards to the bond issue, as other Gowlings attorneys handled this matter.

starting in 2006.  (Defs.' Mot. at 3-8, 12.)  Defendants do not dispute that they entered into a conflict of interest by representing Windsor and Plaintiffs with regards to various parts of the Bridge Plan and that any conflict check that Defendants undertook did not discover the adverse representations.

Several contacts between the parties are relevant here.[4]  In connection with Windsor's opposition to the Site Plan, Defendant Estrin sent a letter to Stamper on behalf of Windsor on September 14, 2004.  (Defs.' Mot., Ex. 14.)  The letter stated, in part

> Dear Mr. Stamper:
>
> Re:  Canadian Transit Company and Detroit International Bridge Company
>      Site Plan Approval Application Dated June 22, 2004
>
> As you know, we [Gowlings] are the solicitors for the City of Windsor concerning this matter.
>
> City Council has now authorized us to provide you with an agreement to be entered into for processing of a revised Site Plan Application.
>
> * * *
>
> In essence, the City wishes to ensure that by processing your application it is clear that doing so is not considered an endorsement by the City of [the Bridge Plan] nor considered to be any acknowledgment or acquiescence by the City that you have a statutory or other right to build a second bridge from Windsor to Detroit.

(*Id.*)

Then, on September 30, 2004, Defendant Estrin attended a meeting at CenTra's offices in Warren, Michigan to further discuss the proposed Site Plan agreement.  Those present at the meeting included Maroun, Stamper and CenTra's attorney.  After further

---

[4]Although Defendants raise a number of other events that they believe indicate Plaintiffs were aware that Defendants were representing Windsor, the Court has selected the most direct examples for inclusion in this Order.

4

negotiation, the parties eventually signed the Site Plan agreement on February 14, 2005. (Defs.' Mot. at 8.)  As with Defendant Estrin's September 2004 letter, this document also made clear that Windsor's approval of the Site Plan had no bearing on its ability to oppose Plaintiffs' proposed Bridge Plan.  (Defs.' Mot., Ex. 7 ¶ S-21.)

Subsequently, and in relation to the Bridge Plan, Defendant Estrin sent a letter to the U.S. Coast Guard on behalf of Windsor stating its opposition to that proposal. (Compl., Ex. A.)  Stamper asserts that receipt of this letter, dated September 14, 2006, was the first notice he received that Defendants were representing Windsor adverse to Plaintiffs' interests in the Bridge Plan. (Stamper Decl., Pls.' Resp., Ex. B ¶ 7.)  Plaintiffs then filed the instant lawsuit on November 20, 2006.

## II. STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In

evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. ANALYSIS

Under the Michigan Rules of Professional Conduct,

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.

MRPC § 1.7(a). Plaintiffs confine their lawsuit to § 1.7(a)(2), and argue that Defendants did not properly obtain Plaintiffs' consent regarding this conflict. While not necessarily applying Michigan law, a number of courts have recognized that a client may impliedly waive its consent to an attorney's conflict of interest.[5] *See Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) (holding that the plaintiff waived the right to disqualify the defendant's counsel due to a conflict when the plaintiff waited for over two-and-a-half years to raise the issue); *City of Kalamazoo v. Michigan Disp. Serv. Corp.*, 125

---

[5] Such findings refute Plaintiffs' contention that the instant situation is non-waivable in the first place. (Pls.' Resp. at 20-22.) Furthermore, none of the cases that Plaintiffs cite in this section of the opinion are on point with the instant dispute.

F. Supp. 2d 219, 243 (W.D. Mich. 2000) (recognizing that a party can waive a conflict, but finding that the contractual provision at issue in that case did not constitute a waiver); *Cleveland v. Cleveland Elec. Illuminating Co.*, 440 F. Supp. 193, 212 (N.D. Ohio 1976) (finding that the plaintiff waived a conflict when the adverse representations went back sixty-five years).  Plaintiffs do not cite, nor did the Court's research uncover, any cases applying Michigan law that held a client could not waive the necessary consent to a § 1.7 conflict.[6]

Here, several events put Plaintiffs on notice that Defendant Estrin was representing Windsor in a capacity directly adverse to them more than a year before Plaintiffs engaged Gowlings to assist with the bond-related issue in December 2005.  Not only did Defendant Estrin send Stamper a letter in September 2004 explicitly stating that Gowlings was representing Windsor with regards to the Site Plan, and that any discussions related to that proposal should not be construed as a willingness to approve the separate Bridge Plan, but the parties met later that month to negotiate an agreement on the Site Plan.  If that was not enough, the final Site Plan agreement signed in February 2005, ten months before the bond representation began, also specifically referenced the Bridge Plan.  Although Stamper declares that he was unaware of Gowlings' representation of Windsor until September 2006, the Court finds that this testimony is fatally inconsistent with the uncontested facts regarding the September 2004 letter to Stamper, the meeting later that month where the parties discussed the Site Plan, which he and Defendant Estrin both

---

[6]Furthermore, the fact that the plaintiffs in *Trust Corp.* and *Cleveland Electric* waited longer without complaining about the conflict is irrelevant, as neither case held that a finding of waiver required that a party wait as long as the plaintiffs did in those cases.

attended, and the resulting February 2005 Site Plan agreement that also mentioned the Bridge Plan. Under these facts, Stamper's declaration is not sufficient to create a disputed issue of material fact.

Finally, Plaintiffs argue that a November 20, 2006 letter from Gowlings to Stamper proves that Plaintiffs did not waive the right to consent in this case. In part, the letter states:

> in order to continue to act on behalf of CTC with respect to the tax and transfer pricing services and the additional matter relating to a bond issue upon which Gowlings was first consulted in February 2006, the mutual consent of the City of Windsor and CTC must be obtained.

(Pls.' Resp., Ex. A at 2.) While the letter states that CTC must consent in order for Defendants to continue its representation on the tax and bond issues, it speaks nothing of Plaintiffs' prior implicit waiver discussed above. Whether Plaintiffs formally consented in writing or not, the fact remains that they previously waived the right to consent, and such a finding is not changed by Defendants' subsequent action to formalize this consent in writing. Therefore, this final argument does not change the outcome of this case.[7]

On these facts, the Court GRANTS Defendants' motion for summary judgment because Plaintiffs waived the conflict surrounding Gowlings' representation of Windsor.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders that Defendants' motion for summary judgment

---

[7] Plaintiffs mention in their brief that Defendants' motion does not address the merits of Plaintiffs' underlying claims in this case, but this is unnecessary now that the Court has agreed with Defendants on the waiver issue. The Court also need not address Defendants' alternative argument that Plaintiffs have not demonstrated that they suffered any damages.

8

is GRANTED and this case is DISMISSED.  Defendant Estrin's motion to dismiss and Plaintiffs' motion to disqualify are both DENIED AS MOOT.

    SO ORDERED.


                      s/Nancy G. Edmunds
                      Nancy G. Edmunds
                      United States District Judge

Dated:  April 30, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 30, 2007, by electronic and/or ordinary mail.

                      s/Carol A. Hemeyer
                      Case Manager