UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRA, INC., a Delaware Corporation and
DETROIT INTERNATIONAL BRIDGE
COMPANY, a Michigan Corporation,

        Plaintiffs,

-vs-

DAVID ESTRIN, Individually, and GOWLING
LAFLEUR HENDERSON LLP, a Canadian
Limited Liability Partnership,

        Defendants.

Case No. 06-15185

Hon. Nancy G. Edmunds

Magistrate Judge Steven R. Whalen

---

### DEFENDANTS' BRIEF REGARDING SUPPLEMENTAL AUTHORITY IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

Defendants file this supplemental brief to bring to the Court's attention a new decision on point with respect to their consent defense and the presumptions on which plaintiffs are attempting to rely. A few days ago, on January 23, 2009, the Court of Appeal of Alberta issued the opinion of *Alberta Union of Provincial Employees v. United Nurses of Alberta, Local 168*, 2009 ABCA 33 (Ex. A). In it, the court specifically addresses the issues of consent to conflicts of interest and confidentiality, when a Canadian attorney concurrently represents multiple clients, and the effect of the client withdrawing that consent at a later date. While the consent in *Alberta Union* was express, the court acknowledged that implied consent is valid. The opinion addresses the effect of consent on issues that are common to our case.

In *Alberta Union*, an administrative agency, the trial court, and the court of appeal all denied a request to disqualify a law firm. The Appellate Court relied upon the *MacDonald*, *Neil*, and

*Strother* opinions that have been cited extensively in this matter, and applied them in the manner that defendants have contended all along that they should be applied.

Among the relevant principles stated in *Alberta Union* are the following:

- "A generic consent (express or by acquiescence) that a law firm can continue to act for two [clients in the same industry] . . ., is not contrary to any principle of public policy. [citations omitted] Choice of counsel is itself a value to be protected. [citations omitted] There is no reason to hold such a generic consent to be *ipso facto* ineffectual." *Alberta Union*, ¶33.

- Although neither client received independent legal advice concerning the alleged conflict, such advice was not required for a valid consent, as the clients were sophisticated litigants. This also impacted the level of disclosure required to be given to the client. *Alberta Union*, ¶36.

- When a client withdraws consent, it cannot undermine or "disentitle" the law firm to act for the other client. *Alberta Union*, ¶¶37, 38.

The court in *Alberta Union* also explained the ramifications of consent and its affect on the law firm's duty of maintaining client confidences. First, the court found:

> **It must have been known that the firm would, from time to time, possess in its collective mind confidential information of both clients.** It was likely also anticipated that some of that information, at least at a general level, would have been in the mind of a single individual lawyer at the firm. Absent a particular consent to the contrary, however, it should be assumed that [the law firm] agreed to take reasonable internal steps to protect the detailed confidential information of each client. It certainly could not be argued that [the law firm] had a duty to pass on to each of the two clients all of the confidential information it received from the other. **But it also must be assumed that both clients agreed that the mere fact the firm from time to time had confidential information from both clients would not disqualify it from acting.**

*Id*. at ¶ 39 (internal citation omitted, emphasis supplied). The court further stated concerning a client's consent to multiple representations:

> Finally, there is the "playbook" problem in which a former client claims that a lawyer who learned information of a very general nature—such as strategies for negotiating transactions, launching hostile takeovers, or settling litigation—should be

>     disqualified from a broad range of adverse representations in which that information might be useful. **The Restatement rejects a sweeping version of the playbook argument, but leaves the door open for more narrowly tailored claims.** A few courts have taken a more expansive view.

*Id*. at ¶ 40 (emphasis supplied). Likewise, plaintiffs here have claimed that they shared strategies in how to stay competitive. That is not enough to enjoin defendants from representing Windsor.

Here, plaintiffs impliedly consented to defendants' continued representation of Windsor adverse to the Second Span by hiring Gowlings at a time when plaintiffs already knew about the representation. Plaintiffs' consent to defendants' representation of Windsor adverse to the Second Span is valid under the *Alberta Union* rubric. In addition, the fact that plaintiffs later withdrew their consent to Gowlings' representation of them while concurrently representing Windsor, does not change plaintiffs' original consent to such representation of Windsor.

The *Alberta Union* court also held that in a former client conflict analysis, even where matters are deemed to be sufficiently related such that confidential information is presumed to be imparted, the law firm can rebut that presumption by showing "that confidential information possessed by one lawyer was not passed on to others." *Id*. at ¶41, citing *MacDonald Estate*. A lawyer can show that the confidential information was protected, kept confidential and not misused. *Id*. at ¶41. Defendants are making that showing here.

Where a client has given consent to a concurrent representation, some of the presumptions in *MacDonald Estate* "no longer operate with full vigour." *Id*. at ¶42. "In particular, where (as here) different lawyers are acting for the different clients, the rule that information known to one lawyer is presumed to be known by the whole firm, and is presumed to be passed on, is less compelling." *Id*. "Where there is express consent to act for two clients, the mere existence of confidential

3

information should not raise a presumption that it has been passed to another lawyer, or misused to the detriment of the client." *Id*. Further, "[t]here is no basis to presume that confidential information has been or will be misused, where all the clients have consented." *Id*. at ¶ 43. The court approvingly quoted a commentator on the shifted burden to the client where there is consent:

> The comments [to the *Model Rules of Professional Conduct*], however, should also state that, once a conflicting representation is consented to, the client giving consent (and any other complaining third party) will have the burden of showing specific facts establishing that the lawyer has misused confidential information in order for the lawyer to be disqualified or sanctioned for her conduct. Otherwise, specious claims of misuse of confidential information would eviscerate the advance conflict waiver. . .

*Alberta Union*, ¶43.

In our situation, the *MacDonald Estate* presumptions argued by plaintiffs must be moderated to account for the consent of a client (i.e. plaintiffs), and the complaining client (i.e. plaintiffs) has an onus "to show a reasonable possibility that confidential information had been compromised. . ." *Id*. at ¶44. "Given that the client has agreed that the firm can act for both clients, it must recognize the reality of the situation." *Id*. at ¶45.

Here, there is no evidence that any of plaintiffs' confidential information was passed to Estrin or Windsor. Plaintiffs solely rely upon an argued presumption that confidential information must have been exchanged. Under Canadian law, that presumption is misplaced because plaintiffs consented to defendants' concurrent representation of Windsor and plaintiffs. But even absent consent, defendants can, have and will remain able to rebut that presumption.

Finally, the *Alberta Union* court held that disqualification is not necessarily the appropriate remedy even if a conflict is found. *Id*. at ¶ 50. "[N]ot every conflict is disabling." *Id*. citing *Neil*. The *Alberta Union* case is insightful, relevant and on point. It supports defendants' positions in this

case, and the evidence should be considered in line with its holdings, to deny plaintiffs' motion for preliminary injunction.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BARRIS, SOTT, DENN & DRIKER, P.L.L.C. |
|  | By:  /s/ Todd R. Mendel |
|  |      Sharon M. Woods (P22542) |
|  |      Todd R. Mendel (P55447) |
|  |      Kevin Kalczynski (P57929) |
|  |      Melonie L. M. Stothers (P65344) |
|  | Attorneys for Defendants |
|  | 211 West Fort St., 15th Floor |
|  | Detroit, Michigan 48226 |
|  | (313) 965-9725 |
|  | Emails: swoods@bsdd.com, tmendel@bsdd.com, |
| Date:   January 28, 2009 | kkalczynski@bsdd.com, mstothers@bsdd.com |

### CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2009, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Joseph A. Doerr (jdoerr@dykema.com); Craig L. John (cjohn@dykema.com); and Thomas J. Murray (tmurray@dykema.com).  There are no manual recipients.

Parties may access this filing through the Court's system.

BARRIS, SOTT, DENN & DRIKER, P.L.L.C.

By:  /s/ Todd R. Mendel
     Todd R. Mendel (P55447)
Attorneys for Defendants
211 West Fort St., 15th Floor
Detroit, Michigan 48226
(313) 965-9725
Email: tmendel@bsdd.com

f:\docsopen\mstothers\l-brf\369127-v1