UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRA, INC., a Delaware Corporation and
DETROIT INTERNATIONAL BRIDGE
COMPANY, a Michigan Corporation

       Plaintiffs,

-vs-

DAVID ESTRIN, Individually, and GOWLING
LAFLEUR HENDERSON LLP, a Canadian
Limited Liability Partnership,

       Defendants.

Case No. 06-15185

Hon. Nancy G. Edmunds

Magistrate Judge Steven R. Whalen

**DEFENDANTS' RESPONSE TO PLAINTIFFS' EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER, RESTRAINING DEFENDANTS FROM FILING FURTHER DAMAGING DOCUMENTS WITH THE U.S. COAST GUARD AND OTHER U.S. FEDERAL AND STATE AGENCIES**

## TABLE OF CONTENTS

ISSUE PRESENTED .................................................. ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................. iii

I.   INTRODUCTION ............................................... 1

II.  FACTS ...................................................... 2

III. ARGUMENT ................................................... 5

    1.    There is No Irreparable Harm ............................... 5

    2.    The Harm to Windsor if Defendants Were Enjoined Outweighs the Harm to Plaintiffs in the Absence of an Injunction ........................ 7

    3.    Plaintiffs Are Unlikely to Succeed On the Merits ................ 8

IV.  CONCLUSION ................................................. 9

## ISSUE PRESENTED

Defendants have represented Windsor at every step of the environmental permitting process for the Second Span over the past five years. That process is now at a critical juncture and Windsor's submission to the Coast Guard is due in two weeks. Should this Court enjoin Windsor from employing defendants to file this crucial submission when:

- plaintiffs have not identified any irreparable harm in the absence of an injunction;

- an injunction would cause substantial harm to the citizens of Windsor; and

- plaintiffs are unlikely to succeed on the merits.

Plaintiffs answer: Yes.

Defendants answer: No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Eberspaecher North American, Inc. v. Van-Rob, Inc.*, 544 F. Supp. 2d 592, 603 (E.D. Mich. 2008)

*Huron v. Richards*, 997 F.2d 1168, 1175 (6th Cir. 1993)

I.      **INTRODUCTION**

Windsor has until April 30, 2009 to submit its concerns to the Coast Guard regarding DIBC and CTC's environmental assessment and the Coast Guard's draft finding that the Second Span will have no significant environmental impact. Plaintiffs filed a purely tactical motion shortly before that submission is due seeking an order enjoining Estrin and Gowlings from submitting Windsor's concerns until this Court is able to rule on plaintiffs' preliminary injunction motion. The entire premise of plaintiffs' motion for "emergency" relief is based on the claim that plaintiffs just discovered that defendants – who plaintiffs have been attempting to enjoin from representing Windsor since September 2008 – would be representing Windsor in submitting comments. But the plaintiffs know full well that defendants have represented Windsor **at every single step** of the environmental permitting process for the Second Span, including a massive submission made to the Coast Guard by Gowlings for Windsor in August 2007, for which plaintiffs did not seek to enjoin Gowlings from representing Windsor. For plaintiffs to now claim that they just learned that defendants would – for the fourth time – submit Windsor's comments on the same subjects in the permitting process is simply not credible.

Since plaintiffs have known about this "emergency" for months, why would they file this motion now?

By the date this motion is heard, Windsor will have only 14 days to make its submission. A last-second injunction removing Estrin and his extensive knowledge of the overall border situation and the Second Span's impacts on Windsor would cripple Windsor's

1

ability to effectively protect the interests of its citizens at this crucial stage of the permitting process.

This motion should be denied for precisely the same reasons that plaintiffs' motion for a preliminary injunction should be denied: (1) defendants' representation of Windsor will not irreparably harm plaintiffs; (2) the harm to Windsor resulting from any injunction vastly outweighs any theoretical harm to plaintiffs in the absence of an injunction; and (3) plaintiffs are unlikely to succeed on the merits.

**II.     FACTS**

As part of the Coast Guard's permitting process for the Second Span, there are two levels of environmental review: (1) an environmental assessment; or (2) an environmental impact statement ("EIS"). An EIS is the most detailed level of review and requires the most significant degree of public involvement. In 2006, the Coast Guard ordered DIBC and CTC to submit an environmental assessment for the Second Span. On February 4, 2009, the Coast Guard approved a "Final Environmental Assessment" ("FEA") and "Draft Finding of No Significant Impact" ("FONSI") for the Second Span. (Ex. 1). This was not made public until February 27, 2009. (Ex. 8). The public comment period on the FEA and FONSI was to expire on March 30, 2009. (Ex. 8, p. 2). On March 26, 2009, the Coast Guard provided advance notice that it would extend the comment period to April 30, 2009. (Ex. 3). Then, the Coast Guard will determine whether: (1) the FEA and FONSI will stand; (2) DIBC and CTC will be required to perform additional study and analysis to complete the environmental assessment process; or (3) DIBC and CTC will be required to submit an environmental

impact statement.

Defendants have represented Windsor through every step of the environmental approval process for the Second Span. For example, defendants submitted Windsor's comments to the Coast Guard in November 2004 in response to the plaintiffs' Preliminary Review Permit Application. (Estrin, 2/3/09, p. 107) (Ex. 571). Defendants, with the assistance of Thompson Hine LLP, submitted Windsor's comments in September 2006 in response to the Coast Guard's preliminary determination that the Second Span was entitled to a categorical exclusion. (Joint Ex. 9 and Tab A.1 to Joint Ex. 9). And defendants again submitted Windsor's comments on DIBC and CTC's environmental assessment in August 2007. (Ex. 4).

On March 23, 2009, Windsor passed a resolution authorizing defendants and Thompson Hine, which has also represented Windsor in the permitting process for the past two and a half years, to submit Windsor's comments on the FEA and draft FONSI. (Ex. 5, pp. 18-19). Plaintiffs characterize the passage of this resolution on March 23, 2009 as "gamesmanship." But the administrative report for the March 23, 2009 meeting, which plaintiffs did not provide to the Court, indicates that the resolution was passed on March 23 because the regularly-scheduled March 16, 2009 Windsor City Council meeting was cancelled due to the "March Break." (Ex. 6, p. 2).[1] The Coast Guard subsequently extended

---

[1] For plaintiffs to claim that they did not know defendants were representing Windsor in the FONSI process until the week of March 23, 2009 is belied not only by the three previous
(continued...)

3

the public comment period to April 30, 2009 at the request of Windsor, the U.S. Environmental Protection Agency, and numerous community groups. (Ex. 2 and 7).[2]

Windsor's public resolution authorizes Gowlings and Thompson Hine to submit Windsor's comments to the Coast Guard. (Ex. 5, p. 18).[3] The federal EA process is being conducted by the Coast Guard under the National Environmental Policy Act ("NEPA"). NEPA's requirements are contained not only in the statute but also in detailed federal regulations, guidelines issued by the President's Council of Environmental Quality, in Presidential Orders and 40 years of federal case law. All of this makes interpretation of NEPA requirements a complex matter under U.S. law. Thompson Hine is taking the lead on submitting comments responding to the Coast Guard's findings, which will include detailed analysis of NEPA's requirements. Estrin, who has interacted with Windsor's experts on the environmental and social impacts of the Second Span for many years, is providing information to Thompson Hine regarding analysis and environmental impacts in Canada that were not properly considered by the Coast Guard. Plaintiffs are now essentially seeking to

---

[1](...continued)
submissions defendants made for Windsor during the permitting process but also by the fact that plaintiffs are attempting to enjoin defendants from representing Windsor against the Second Span.

[2]Windsor's request to extend the time to comment undermines plaintiffs' insinuation that defendants were trying to "hide" their involvement in the FONSI process until the last second. (Motion, ¶ 11).

[3]Plaintiffs claim that defendants are "hiding" behind Thompson Hine, is belied by Windsor's **public resolution** authorizing both Gowlings and Thompson Hine to submit comments to the Coast Guard. (Ex. 5, p. 18).

enjoin Thompson Hine from representing Windsor, and from making a submission to the Coast Guard in Washington, D.C. Yet, neither Thompson Hine nor Windsor are before the Court.

### III. ARGUMENT

#### 1. There is No Irreparable Harm

"A showing of 'probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" [citations omitted]. *Eberspaecher North American, Inc. v. Van-Rob, Inc.*, 544 F. Supp. 2d 592, 603 (E.D. Mich. 2008). But plaintiffs have not even attempted to identify or explain the alleged irreparable harm that would result from defendants' representation of Windsor in the FONSI process. Instead, plaintiffs rely on mere conclusions. (Motion, ¶ 10) ("Plaintiffs will suffer immediate and irreparable injury, loss, and damage if a temporary restraining order does not issue.")

The premise of plaintiffs' motion appears to be the tired allegation that Estrin will use confidential information in the possession of Hill and Wach in making comments on the FONSI. (Motion, ¶ 16). Plaintiffs' premise is not supported by any evidence and should be rejected for several reasons.

First, plaintiffs have never identified any confidential information provided to Hill or Wach that has any relevance whatsoever to the FONSI process. In fact, Calderone conceded that Hill and Wach's work had nothing to do with the environmental permits plaintiffs are seeking or the environmental or social impacts of a Second Span. (Calderone, 1/13/09, p.

150-159). Second, even if Hill and Wach had information relating to environmental permits, the evidence established that Estrin never received it. (Defendants' Proposed Findings of Fact and Conclusions of Law, ¶¶ 9-10) [Docket No. 102]. Third, although plaintiffs' first amended complaint alleged that Estrin's earlier submissions to the Coast Guard "without a doubt" relied on plaintiffs' confidential information, plaintiffs abandoned that claim during the evidentiary hearing by failing to present any evidence or testimony to support it.

Fourth, the August 2007 submission to the Coast Guard by Gowlings on Windsor's behalf is especially noteworthy. (Ex. 4). Its subject matter involves the deficiencies in DIBC and CTC's Environmental Assessment, and posits that an EIS is required, not an Environmental Assessment, to properly assess the significant impacts of the Second Span. (Ex. 4, pp. 1-3). This August 2007 submission was very substantial in its own right, and also references and incorporates Estrin's September 2006 letter with its supporting volumes of exhibits to the Coast Guard. (Ex. 4, pp. 1-3). The submission of Windsor that is due on April 30, 2009, is the next step concerning DIBC and CTC's Environmental Assessment and whether an EIS will be required. Thus, the subject matter is the same on all of Gowlings' submissions for Windsor to the Coast Guard concerning the Second Span from November 2004 through the upcoming April 30, 2009 submission.

Yet, plaintiffs did not seek to enjoin Gowlings from submitting, on Windsor's behalf, the August 2007 submission to the Coast Guard, even though it covers the same subject matters as the upcoming April 30, 2009 submission. Plaintiffs could have filed a motion for

6

an injunction preventing Gowlings from submitting the August 2007 submission to the Coast Guard, pending plaintiffs' appeal of this Court's granting of summary disposition against them. Fed. R. App. P. 8(a)(2). Plaintiffs did not do so. No emergency has suddenly been created because the next submission on these subject matters is now due to the Coast Guard.

In sum, plaintiffs have not demonstrated they will suffer irreparable harm if defendants continue to assist Windsor in the FONSI process. Plaintiffs' motion should be denied on that basis alone.

### 2. The Harm to Windsor if Defendants Were Enjoined Outweighs the Harm to Plaintiffs in the Absence of an Injunction

The absence of irreparable harm is a strong reason to deny plaintiffs' motion. But the extraordinary harm that a last-second injunction would cause to Windsor also militates strongly in favor of denying plaintiffs' motion. *Huron v. Richards*, 997 F.2d 1168, 1175 (6th Cir. 1993) (Before resorting to the extraordinary remedy of an injunction, "a court must balance the interests of the parties giving particular attention to the public consequences of a decree.")

Windsor's comments on the FEA and FONSI are due on April 30, 2009. An order enjoining defendants from assisting Windsor in the FONSI process at this juncture would cause substantial harm to Windsor. The evidence establishes that:

- Estrin is one of the very top environmental lawyers in Canada and has represented Windsor for more than six years on border-crossing issues;
- Windsor does not do anything even remotely related to the border without seeking Estrin's advice;

7

- Estrin has directed every one of Windsor's submissions to the Coast Guard during the permitting process for the Second Span; and

- If Estrin were enjoined, Windsor would be in a "panic" situation. (Wilkki, 1/14/09, p. 8, 11-13, 37, 66, 125; Ex. 514, 571, Joint Ex. 9; Ex. 4).

That "panic" would be even more acute if the Court were to enjoin defendants from representing Windsor just days before this critical filing is due. The Court is well aware of the impacts of the potential Second Span on the residents of Windsor and it is undisputed that only Estrin has the detailed overall knowledge of those impacts and how to manage them. (*See e.g.*, Ex. 514, ¶¶17-24). Removing Estrin from the process at this stage would substantially impact Windsor's ability to protect the interests of its citizens on the important issues raised by the potential construction of the Second Span.

In sum, the harm that an injunction would cause to Windsor vastly outweighs any alleged harm to plaintiffs in the absence of an injunction.

### 3.  Plaintiffs Are Unlikely to Succeed On the Merits

This issue was thoroughly addressed in Defendants' Proposed Findings of Fact and Conclusions of Law [Docket No. 102, p. 25-35] and Defendants' Response to Plaintiffs' Closing Brief [Docket No. 106, pp. 7-8]. Rather than repeat those arguments here, defendants incorporate them by reference into this response.

However, one piece of evidence is worth re-emphasizing. The draft agreement contained in Ex. 503, which Estrin drafted on behalf of Windsor and sent to Stamper in September 2004, includes a provision explaining Windsor's position that the Second Span

8

should be subject to the highest level of environmental scrutiny and that all of the improvements associated with the Second Span should be taken into consideration in the environmental permitting process:

> (c)  [Plaintiffs] agree that should they in future proceed with an application to construct a second or twinned bridge in this location **they will provide an environmental impact assessment which consider the project to be assessed as the proposed bridge and any associated road, road widenings, closings, approaches, buildings, plaza, inspection or other facilities and structures required for the working of traffic to from and over the bridge**. (Ex. 503/127 (emphasis added); Estrin, 2/3/09, p. 104-106).

This position – which Estrin conveyed on behalf of Windsor to Stamper in 2004 – is the same one Windsor, again through Estrin, has consistently taken in every one of its submissions in the permitting process for the Second Span. Therefore, plaintiffs cannot claim they didn't know Windsor, through Estrin, would take this same position again at this stage of the process.

## IV.  CONCLUSION

For all of the foregoing reasons, and for the same reasons that plaintiffs' motion for a preliminary injunction should be denied, plaintiffs' motion for a temporary restraining order should be denied as well.

9

Respectfully Submitted,

By: /s/ Kevin Kalczynski
    Sharon M. Woods (P22542)
    Todd R. Mendel (P55447)
    Kevin Kalczynski (P57929)
    Melonie L. M. Stothers (P65344)
Attorneys for Defendants
211 West Fort St., 15th Floor
Detroit, Michigan 48226
(313) 965-9725
Emails: swoods@bsdd.com, tmendel@bsdd.com, kkalczynski@bsdd.com, mstothers@bsdd.com

Date: April 15, 2009

10

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2009, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Joseph A. Doerr (jdoerr@dykema.com); Craig L. John (cjohn@dykema.com); and Thomas J. Murray (tmurray@dykema.com). There are no manual recipients. Parties may access this filing through the Court's system.

BARRIS, SOTT, DENN & DRIKER, P.L.L.C.

By: /s/ Kevin Kalczynski
    Sharon M. Woods (P22542)
    Todd R. Mendel (P55447)
    Kevin Kalczynski (P57929)
    Melonie L. M. Stothers (P65344)
Attorneys for Defendants
211 West Fort St., 15th Floor
Detroit, Michigan 48226
(313) 965-9725
Emails: swoods@bsdd.com, tmendel@bsdd.com, kkalczynski@bsdd.com, mstothers@bsdd.com

Date: April 15, 2009

373495.2